[No. 7900.]

## In Re Senate Resolution No. 4.

1. Legislative Questions—*As to Completed Legislation*—The duty of the court in responding to legislative questions is limited to those which relate to proposed legislation. Completed legislation is not a subject of legislative inquiry. It is not within the province of the court to advise the general assembly as to whether existing legislation upon any subject satisfies the requirements of the constitution. All departments of government are of equal dignity. Neither can declare that another has not performed a duty imposed by the constitution.

2. ——*Pending Legislation*—There were upon the statute books
two acts relating to the hours of service of men employed in mines,
smelting furnaces, and other like places, one adopted by the general
assembly (Laws 1911, c. 149), and which being referred to the peo-
ple, had received their approval. The other, initiated pursuant to sec-
tion 1 of article V of the constitution, (Laws 1910, c. 3) assuming to
repeal the former. This act also received the popular sanction. A
bill was pending in the general assembly upon the same subject, sub-
stantially identical with the earlier act, repealing both the former
acts and declaring that the enactment therein proposed was "neces-
sary for the immediate preservation of the public health and safety.".
Upon an interrogatory from the senate as to its duty in the prem-
ises, it being fairly inferrable from the communication that it was
a desire of that body to pass an act which should remove the embar-
rassments attending the situation so presented, *held*, that the ques-
tion was within the provisions of section 3 of article VI of the con-
stitution.

3. ——*Involving. Private Rights*—Considering that private
rights might have accrued under the act of 1911 or under the
initiated act the court declined to express an opinion as to which,
if either, was in force, or when either took effect, or as to the effect
of the repealing clause in the initiated act.

4. CONSTITUTIONAL LAW—*Legislative Power*—Under the provi-
sion of the constitution (sec. 1, art. V, Laws 1911, c. 3), that "This
section shall not be construed to deprive the general assembly
of the right to enact any measure," the legislature may repeal even
an initiated act, approved by the people. And may by declaring that
a measure is "necessary for the immediate preservation of the pub-
lic peace, health and safety," prevent the reference thereof to the
people. Such a declaration concludes all departments and all parties,
in so far as it abridges the right to invoke the referendum.

Hon. FRED FARRAR, attorney general, Mr. FRANCIS E.
BOUCK, deputy attorney general, Mr. HENRY A. DUBBS, Mr.
HORACE N. HAWKINS, Mr. HARRY B. TEDROW and Mr. JOHN
H. GABRIEL, *Amici Curiae*.

The honorable senate, now in session, has submitted ques-
tions to this court with the request that it give its opinion
upon, and answer thereto, which are preceded by a resolution,
reciting, in substance, that the twelfth session of the general
assembly passed an eight hour act, which was thereafter de-

clared unconstitutional; that at the election on the 4th day of November, 1902, a constitutional amendment was adopted (section 25-a, art. V), which empowered and directed the general assembly to provide by law for a period of employment not to exceed eight hours within any twenty-four hours, except in cases of emergency, where life or property was in imminent danger, for persons employed in underground mines, or other underground workings, blast furnaces, smelters, and any ore reduction works, or branch industry or labor that the general assembly might consider injurious or dangerous to health, life or limb, and to prescribe suitable penalties for the violation of such law; that at the fifteenth session of the general assembly an act was passed, providing for an eight hour day in underground mines and underground workings, and in specified ore reduction works—Laws 1905, 284; that at the eighteenth session of the general assembly an act was passed—Session Laws 1911, 454—which declared that employment in the mines, workings, smelters and other reduction works mentioned in the title was injurious to health, and dangerous to life and limb; that the period of employment of men engaged in such workings and reduction works should not exceed eight hours within any twenty-four hours, except in cases of emergency, where life or property was in imminent danger, and prescribed a penalty for a violation of its provisions, and in express terms repealed the act passed in 1905. The act of 1911 was approved June 2, 1911. It did not contain any declaration to the effect that it was necessary for the immediate preservation of the public health or safety.

The resolution then recites that, on the 3rd day of August, 1911, and within ninety days after the eighteenth general assembly had adjourned for the session, there was addressed to, and filed with, the secretary of state a petition, purporting to be signed by the requisite number of legal voters, asking that the 1911 act be referred to the people for ratification at the ensuing general election; that thereafter, and on the

2nd day of July, 1912, there was addressed to, and filed with, the secretary of state a petition, purporting to be signed by eight per cent. of the legal voters of the state, requesting that there be submitted to the people at the next regular general election, for adoption or rejection, a proposed measure, which was entitled the same as the act of 1911, except that instead of reciting, "and repeal chapter 119 of the Session Laws of 1905, approved March 21, 1905, and all other acts and parts of acts in conflict with this act," it recites, "to repeal all other acts and parts of acts in conflict with this act." Section 1 of this proposed act declared, in substance, that employment in all underground mines, underground workings, open cut workings, open pit workings, or directly attending the reduction works or ovens mentioned in the title, was injurious to health, and dangerous to life and limb, whenever such employment was continuously in contact with noxious fumes, gases or vapors. By the next section it was provided that the period of employment of men working in all underground mines, underground workings, open cut workings, open pit workings, or directly attending the reduction works mentioned in the title, should not, during any one month, exceed an average of eight hours within any twenty-four hours, whenever such employment was continuously in contact with noxious fumes, gases or vapors, except where life or property was in imminent danger. The act then provided a penalty for its violation, and purported to expressly repeal the act of 1905 and the act of 1911. Both these measures were published by the secretary of state and appeared on the official ballot at the general election in November, 1912, at which time, according to the certificate of the canvassing board of the state, both measures were adopted. The resolution then continues:

"And, Whereas, no proclamation was made by the governor as to the adoption or rejection of either of said two measures;

.    . And, Whereas, uncertainty exists in the minds of many as to the effect of said election on said act of the eighteenth session of the general assembly, approved June 2, 1911, and as to whether or not the said act is now in existence, or whether or not it has been repealed.

And, Whereas, the constitution of the state of Colorado provides, as hereinbefore quoted, that "The general assembly shall provide by law, and shall prescribe suitable penalties for the violation thereof, for a period of employment not to exceed eight hours within any twenty-four hours (except in cases of emergency where life or property is in imminent danger), for persons employed in underground mines, or other underground workings, blast furnaces, smelters; and any ore reduction works or other branch of industry or labor that the general assembly may consider injurious or dangerous to health, life or limb;

And, Whereas, a question exists as to whether or not the duty thus imposed upon the general assembly has been carried out, or whether the obligation and duty thus imposed on the general assembly still exists;

And, Whereas, the members of this session of the general assembly are desirous of performing any duty that may have devolved upon them by the constitution;

And, Whereas, there has been introduced in the present session of this house, and is now pending, an act in the words and figures following, to-wit: "Senate Bill No. 47 (By Senator Bellesfield)."

The title then recites that it is a bill to regulate and limit hours of employment in mines, specified workings connected therewith, reduction works named, and coke ovens, and to declare certain employments injurious to health and dangerous to life and limb; to provide a penalty for its violation; to repeal the eight hour law of 1905; to repeal the eight hour act submitted by initiative petition at the last November election; and to declare that the act is a law necessary for the immediate preservation of the public health and safety, and shall be

in effect from and after its passage, and to repeal all other acts and parts of acts in conflict with it.

Section 1 of this proposed act declares that employment in the mines, reduction works and ovens mentioned in the title, is injurious to health, and dangerous to life and limb. By section 2 it is provided that the period of employment of men working in such mines or workings connected therewith, and reduction works and ovens mentioned in the title, shall not exceed eight hours within any twenty-four hours, except in cases of emergency, where life or property is in imminent danger. By section 3 a penalty is provided for the violation of the act. By the sections following it is provided that the eight hour law of 1905 and the act submitted through initiative petition at the last general election in November, 1912, are repealed, and that any adoption of the latter was annulled and should be held for naught, and that any and all other acts and parts of acts in conflict with the present proposed act of the nineteenth session of the general assembly are repealed. Sections 6 and 7 of the proposed act are as follows:

"6. It is hereby declared and enacted that this present act is a law necessary for the immediate preservation of the public health and safety."

"7. In the opinion of the general assembly an emergency exists; therefore, this act shall take effect and be in force from and after its passage."

The resolution then continues:

"And, Whereas, the constitution of the state of Colorado provides that the supreme court shall give its opinion upon important questions upon solemn occasions, when required by the senate or the house of representatives;

And, Whereas, there has been much contention, strife, agitation and controversy throughout the state of Colorado for many years over the eight hour question, and it is of the highest importance to the people that all such questions be speedily settled and determined;

Now, therefore, be it resolved by the senate of the nineteenth session of the general assembly of the state of Colorado, that the supreme court of the state of Colorado be, and it is hereby requested, to give its opinion upon, and in answer to the following questions:

(1)    Was the said act approved June 2, 1911, such an act as could be referred to a vote of the people at the November, 1912, election upon a referendum petition?

(2)    If the said 1911 act of the general assembly was a measure that could be referred by a referendum petition, could there legally be submitted to the people by initiative petition at the same election another measure containing a clause repealing said 1911 act? In other words, was it legal when the 1911 act was to be ratified or rejected at the election, to also submit at said election, by initiative petition, a measure repealing, or attempting to repeal, a measure which the people were, at said election, to ratify or reject, and what was the legal effect, if any, of said repealing clause in said initiative measure?

(3)    What was the legal effect of both said initiative measure and said referred act receiving a majority vote at the same election? Did both of said measures become the law, or only one of them, and if only one of them, which one?

(4)    Is there now any duty devolving upon the general assembly, under the constitutional clause hereinbefore quoted, or has the duty of the general assembly been fully performed?"

This resolution and the foregoing interrogatories were accompanied by a certificate, stating that the resolution had been duly adopted by the senate, and that the proposed act mentioned in the resolution which the senate now has under consideration and is designated Senate Bill 47, has passed second reading.

*PER CURIAM.*

From the foregoing resolution, it is evident the honorable senate is confronted with an anomalous situation, from

the fact that it appears two acts are upon the statute books upon the same subject, both, apparently, adopted, the initiated one containing a repealing clause which creates uncertainty; and that the senate has under consideration a proposed act on the same subject, which has passed second reading, the purpose of which is to take the place of both the others, and that from the questions propounded, though not directly expressed, it is the desire of the senate to pass an act which cannot be successfully attacked for any of the reasons which the first three questions impliedly suggest, provided it has authority to do so in such manner as will prevent the situation now presented from being repeated in the future. We think we are justified in deducing this conclusion from the fact that if the senate were not in doubt regarding its authority in the premises, the proposed act would be passed in due course, for by so doing the two acts mentioned would be repealed, their validity, so far as the future is concerned, no longer open to question, and in their place there would be but one act, the validity of which, on the score of its passage, would be unassailable. We think this presents the question of the constitutionality of the proposed act in particulars we shall later consider, within the constitutional provision under which the resolution and questions have been submitted, the purpose of which was to have unconstitutional legislation avoided by having the validity of proposed acts determined in advance.—*In re Senate Bill 65, District Attorneys,* 12 Colo. 466.

We cannot express any opinion with respect to the validity of the referred and initiated acts, which, if either, is in force, or when they took effect, or what was the legal effect of the repealing clause in the initiated measure, for the reason that both purport to be completed legislation; that under them rights may have arisen or attached which should not be determined in a purely *ex parte* proceeding; and for the further reason that, so far as the validity of legislation is involved. in response to legislative questions, it is confined to proposed acts, in order that unconstitutional legislation may be avoided,

and cannot call for a construction of acts already passed. The results which would follow any other rule demonstrates that the validity of completed legislation cannot be made the subject of legislative inquiry; otherwise, this court, at the request of the legislative department, could be called upon to determine the validity of any number of acts which have been upon the statute books for many years, and under which rights, public and private, have attached.

That we should not determine, in any respect, the validity of the referred and initiated acts, however, does not prevent us from furnishing the information at least impliedly sought which will enable the honorable senate to clear the situation. The proposed act expressly repeals the act of 1905, and also the one initiated, and all other acts in conflict therewith. There can be no question about the authority to repeal the act of 1905. The question regarding the power to repeal the initiated and referred acts (if it can be said the latter is included in the general repealing clause) turns upon a construction of the constitutional amendment usually spoken of as "The Initiative and Referendum." That is, does this provision prevent the general assembly from repealing an initiated act, or one which has been referred? We think not, for it expressly provides: "This section shall not be construed to deprive the general assembly of the right to enact any measure." This language is broad and comprehensive. An act repealing an act is a measure, and as the general assembly is not deprived of the right to enact any measure, it clearly has the power to repeal any statute law, however adopted or passed.

The next question is, can the general assembly lawfully prevent the proposed act from being referred by the declaration contained in section 6 thereof. To answer this, reference must again be had to the constitutional provision under consideration. It provides that the power reserved designated the "referendum," "may be ordered, except as to laws necessary for the immediate preservation of the public peace, health or safety." Whether a law is of this character, is for the general

assembly to determine, and when it so determines, by a declaration to that effect in the body of a proposed act, we are of the opinion that such declaration is conclusive upon all departments of government, and all parties, in so far as it abridges the right to invoke the referendum. Such a declaration is a part of the act, and may be passed by the majority required to pass any act, and is in no sense an emergency clause, as contemplated by article VI, sec. 19.

As to the fourth question, it is not, in our judgment, within the province of this court to say whether or not the general assembly has performed the duties imposed by the constitution. All departments of government stand on an equal plane, and are of equal constitutional dignity. The constitution defines the duties of each. Neither can call the others directly to account for actions within their province; and so it follows, that the judicial cannot say to the legislative department that it has, or has not, preformed its constitutional duties. That the legislative department must determine for itself, independent of either of the other departments of government, by passing such legislation as, in its judgment, the constitution requires. The views we have expressed are simply intended to aid the general assembly in solving this important question.

In conclusion, we add that this court will always take pleasure in rendering to each house of the general assembly such assistance, under the constitutional provision by virtue of which the honorable senate has propounded the interrogatories considered, as shall be consistent with its position as a separate and independent branch of our state government, and in harmony with what is deemed a sound exposition of the constitution—the paramount law of the state.

The clerk is directed to forthwith transmit to the honorable senate a copy of this opinion.

Decision *en banc.*