Ms. Paula Herzmark Executive Director Department of Local Affairs 1313 Sherman Street Denver, Colorado 80203
Dear Ms. Herzmark:
This opinion letter is in response to your November 20, 1979 letter, in which you inquired about certain legal questions that have arisen in connection with sales taxes in Summit County.
To properly understand the present controversy, it is necessary to examine C.R.S. 1973, 29-2-108, which sets a limit on the aggregate total sales tax imposed by the state, any county, and any city or town in any locality at 7 percent. The town of Breckenridge has a 2 percent sales tax, the county of Summit a 2 percent tax, and the state a 3 percent tax. Under the present levies, none of the affected taxing entities can raise their tax rates because of the statutory limit. This limitation in effect allows a town, with its limited geographic area, to preclude the entire county from increasing its sales tax levy because sales taxes in one locality already total 7 percent. The only way that Summit County can raise its levy is for the towns in the county to terminate their levies or lower their rates and substitute proceeds collected by the county.
In the specific case presented here, the town of Breckenridge sales tax ordinance approved by the people provided that if Summit County increased the county sales tax from 2 percent to 4 percent, the Breckenridge sales tax would automatically terminate. This scheme was carefully worked out as a cooperative effort between the town and the county.
The board of trustees of the town of Breckenridge adopted an ordinance on September 13, 1977, which purportedly repealed the automatic termination clause in the original town ordinance. The adoption of the amending ordinance by the Breckenridge Board of Trustees was apparently an effort to avoid the necessity for an election to repeal the termination clause.
C.R.S. 1973, 29-2-104(7) is also involved in this question. This section states that when a county sales tax proposal is defeated in an election, the question cannot be resubmitted to the people for 2 years. Summit County had an election on August 5, 1977, at which time a 2 percent sales tax increase was defeated.
In anticipation of the resubmission of the county increase (after 2 years), the towns of Dillon, Silverthorne, and Breckenridge cooperated by including in their local sales tax enactments automatic termination provisions which would end their levies upon the effective date of an increase in the county sales tax.
Summit County is not a home rule county, and the towns in question are statutory towns and cities. There is no inherent power vested in statutory cities and towns and counties to levy a sales and use tax. This power is derived solely from the provisions of C.R.S. 1973, 29-2-101 et seq. and is subject to all the conditions therein.
Since the adoption, in 1967, of the local sales tax statutes, there has been no litigation in the courts concerning interpretations of these statutes. The absence of such court interpretations leaves us without case law to assist in rendering this opinion.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents three questions relating to the Summit county statutes and they will be answered in turn:
1. If the county tax proposal provides for rebating sales tax revenues collected within existing municipalities, would the county have to rebate tax revenues to a town that incorporated after the voters approved the tax proposal?
 The answer to this question is "yes," and is contained in the text of the Summit County sales tax resolution dated September 18, 1970, which was approved at a county election on November 3, 1970, and which became effective July 1, 1971.
2. Can a municipality which passed a sales tax ordinance by a vote of the people later delete a clause from that tax ordinance by council action?
 The answer to this question is "no." The governing board of a statutory town or city cannot by simple legislative action delete a material clause from the tax ordinance which has been approved by a vote of the people. Breckenridge is a statutory town, and it should be noted that this opinion does not apply to home rule towns and cities.
3. Is there a way to guarantee that the sales tax on food would not be repealed by the county, without a town's approval, if a "municipal" sales tax were properly changed to a "county" tax?
The answer to this question is "no."
ANALYSIS
Paragraph 4 of the Summit County sales tax resolution reads as follows:
 Should any area of the County of Summit be subsequently incorporated into a town, the sales tax collected within the area of the newly incorporated town shall be entitled to have the sales tax collected therein and distributed in the aforementioned manner.
According to information furnished me by the Department of Revenue, this resolution is still in effect and this provision has not been deleted or amended.
At the time the resolution was drafted, the Department of Revenue suggested the inclusion of this provision to address in advance the very question which you raise now.
In view of this specific provision adopted by the voters, the answer to your question is in the affirmative. The county must rebate revenues to a subsequently incorporated town.
The automatic termination provision in the Breckenridge ordinance approved by the people reads as follows:
 Section 9. Termination. In the event that the County of Summit passes a resolution and subsequent referendum for the imposition of a county wide sales tax increase in the amount of two percent (2%) after the effective date of the Breckenridge sales tax increase, the two percent (2%) sales tax increase made effective by the within Ordinance shall terminate at the time the county wide sales tax increase becomes effective.
The ordinance adopted by the board of trustees in 1977 simply stated that the above section 9 was repealed.
The original ordinance also contained the following provision:
 Section 6-2. The Board of Trustees may amend, alter or change this Ordinance, except as to the two percent (2%) rate of the tax herein imposed, subsequent to adoption by a majority vote of the Board of Trustees. Such amendment, alteration, or change need not be submitted to the electors of the Town of Breckenridge for their approval.
The provisions relating to sales taxes are found in C.R.S. 1973,29-2-101 et seq. Prior to the enactment of this statute in 1967, neither counties nor statutory towns and cities had the authority to levy sales and use taxes. Therefore, the state statutes are controlling over any provisions of a local ordinance or resolution not in conformance therewith. The legislature decreed that the only way counties and statutory towns and cities could have a local sales and use tax was by following explicitly the directions in 29-2-101 et seq.
The county and municipal sales or use tax law states in C.R.S. 1973, 29-2-102, as amended, that:
 Any incorporated town or city in this state may adopt a municipal sales or use tax, or both such taxes, by ordinance in accordance with the provisions of this article, but only if such ordinance provides for the submission of any such tax proposal to an election by the qualified electors of such town or city for their approval or rejection at a regular municipal election or at a special election called for the purpose. . . .
(Emphasis supplied.)
The authority for a statutory town, such as Breckenridge, to adopt a sales and use tax ordinance is found in C.R.S. 1973,29-2-101 et seq. These statutes clearly require that any such sales and use tax be adopted by an ordinance approved by the qualified voters. Not just the concept of a sales tax is to be submitted, but the contents of the entire proposal must be submitted for voter approval. Moreover, the contents of the proposal must include certain provisions contained in C.R.S. 1973, 29-2-105 (sales tax) and 29-2-109 (use tax).
The question then becomes, in view of section 6-2 of the Breckenridge ordinance, whether the voters of a town can confer power upon their governing board to materially amend the sales tax ordinance.
It is clear that the authority of a statutory town to impose a sales tax is derived from a statutory grant of that power which requires voter approval. Further, there is no statutory authority to permit delegating to a town's governing board the power to materially amend, alter, or change any provision of the voter-approved ordinance.
Perhaps the best analogy here is with the initiative/referendum provision in article V, section 1, Colorado Constitution. In that provision, the people of Colorado reserved the right to enact initiative state legislation, among other powers. By its own language, article V, section 1 "shall not be construed to deprive the general assembly of the right to enact any measure."
The case of In Re Senate Resolution, 54 Colo. 262,130 P. 333 (1913), raised the issue of whether the general assembly had the authority to amend or repeal an initiated act. The Colorado Supreme Court held that the general assembly has the power to amend or repeal an initiated act because of the specific language in the constitution in which "the general assembly is not deprived of the right to enact any measure." 54 Colo. at 270.
Contrast that situation with the local sales tax statutes, in which there is no reference whatever to the subsequent authority of the city, town or county governing board. The people of the town or county were expressly given the right to approve or reject.
Further, the language in article V, section 1, Colorado Constitution relating to municipal initiatives does not include any provision similar to that involving the general assembly.
In this regard, it does not matter whether a sales tax ordinance was adopted pursuant to C.R.S. 1973, 29-2-101 et seq., alone, or in conjunction with C.R.S. 1973, 1-40-116. In my opinion, because the grant of authority comes from the state statutes, the people of a statutory town or city do not have the authority to confer this power upon the town council or the board of trustees. C.R.S. 1973, 29-2-101 et seq., does not confer upon the board of trustees the power to delete the automatic termination clause in the ordinance. The power conferred is not sufficiently specific or definite to warrant such unrestrained municipal legislation affecting taxation by the town council.
An appropriate standard may be found in McQuillin's treatise,Municipal Corporations, 1969 rev. vol. 6, section 21.01:
 Generally speaking, an ordinance as amended is to be tested, with respect to municipal power to enact it and the method and reasonableness of the exercise of such power, by the same provisions, rules and limitations that govern the original enactment of the ordinance.
In this particular case, the power to enact the sales tax was accompanied by the requirement of an election. Reasonably, the adoption of a material amendment to the ordinance would also require an election. "An amendment must be within the confines of the . . . statutory authority under which alone the municipal corporation can act." McQuillin, supra, section 21.02.
In my opinion, once the town people have voted on a local sales tax proposal, the council or board of trustees cannot overrule material terms of the approved ordinance without submitting the variances to another vote of the people.
Nor can the council or board by its own action change the terms of the tax as voted on by the people. In this case, the people voted to keep the 2 percent local levy in effect only until such time as the county could raise its rate.
In considering the question of a referendum, the Colorado Supreme Court has said: "Under pertinent rules of construction applicable to the power of referendum, the reviewing court will not extend by implications and exceptions which take from the people the right to challenge and reject, if they wish, new schemes or concepts of taxation imposed upon them by their legislative body." Brooks v. Zabka, 168 Colo. 215, 450 P.2d 653
(1969). The court also stated that limitations on the power of referendum must be strictly construed and should not be extended by either implication or inference. Therefore, it is my opinion that a statutory town or city which passed a sales tax ordinance by a vote of the people cannot later amend or repeal that ordinance by action of its governing board.
The opinion in question three is based on the following fact situation: that a county adopts or increases a sales tax, with the result that the municipal sales taxes then in effect will terminate by their own provisions, as for example, in the Breckenridge ordinance, on page four above.
In 1979, the general assembly enacted H.B. 1611. Included in this law is a provision repealing the state sales and use tax on food of the type commonly sold by grocers, effective January 1, 1980. Food purchases would be exempt from town, city or county sales tax only if the issue is put to a vote of the people and an express exemption is approved, under H.B. 1611, which amended C.R.S. 1973, 29-2-105(1)(d).
Therefore, if a county expressly exempted food from its sales tax, a town or city may continue to tax food sales only
if there continued to be a town or city sales tax. However, if the town or city sales tax automatically terminated upon the county adopting or increasing the sales tax, then the expressly adopted exemption in the county ordinance would prevail.
SUMMARY
When a county sales tax proposal provides for rebating sales tax revenue collected within the existing towns in the county and also provides that subsequently incorporated towns shall also be entitled to the sales tax proceeds in the newly incorporated town, the county is bound to make such division.
It is further my opinion that a statutory town or city that has adopted a sales tax ordinance by a vote of the people, pursuant to statute, cannot amend or alter material provisions of that ordinance by action of its governing board.
And, in light of the language of H.B. 1611 and of the state sales tax statutes, there is no way to guarantee that the sales tax on food would not be repealed should a statutory town's sales tax be automatically terminated by the adoption of a county sales tax or sales tax increase that expressly eliminates the sales tax on food purchases.
For further information, reference should also be made to the letter to you dated August 24, 1979, signed by James R. Willis, assistant solicitor general, concerning the Summit County sales tax.
Very truly yours,
 J.D. MacFARLANE Attorney General
TAXATION AND REVENUE COUNTIES MUNICIPAL CORPORATIONS
C.R.S. 1973, 29-2-101
C.R.S. 1973, 29-2-102
C.R.S. 1973, 29-2-104(7) C.R.S. 1973, 29-2-105
C.R.S. 1973, 29-2-108
C.R.S. 1973, 29-2-109
Colo. Const. art. V, § 1
LOCAL AFFAIRS, DEPT. OF Local Government, Div. of REVENUE, DEPT. OF
1. Distribution to incorporated towns within a county of the county sales tax proceeds is governed by the rebate provisions of the county sales tax resolution.
2. A statutory city or town that has adopted a sales and use tax, or a sales tax ordinance by a vote of the people, pursuant to statute, cannot amend or alter material provisions of that ordinance by action of its governing board.
3. If a statutory town enacts an automatic repeal of the town's sales tax conditioned upon the approval by the county residents of a county sales tax, the town has no assurance that the county tax will not exempt food.