916 P.2d 528 (1996)
In re PROPOSED INITIATIVE 1996-4.
Lois COURT and Joseph S. Drew, as Proponents of the Initiative, Petitioners,
v.
Carole POOL, Richard Westfall, and Rebecca Lennahan, as the State Title Setting Board, Respondents.
No. 96SA98.
Supreme Court of Colorado, En Banc.
May 13, 1996.
*530 Isaacson, Rosenbaum, Woods & Levy, P.C., Mark G. Grueskin and Joseph Cachey III, Denver, for Petitioners.
Gale A. Norton, Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, and Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Respondents.
Justice SCOTT delivered the Opinion of the Court.
Pursuant to section 1-40-107(2), 1B C.R.S. (1995 Supp.), petitioners Lois Court and Joseph S. Drew (proponents) filed a petition to review the action of the initiative title setting board (Board). The Board refused to set a title, ballot title and submission clause, and summary for Initiative 1996-4 (Initiative) (attached as APPENDIX A) because it determined that the Initiative violated the single subject requirement of article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, 1B C.R.S. (1995 Supp.). We approve the Board's action.

I
On February 21, 1996, the Board refused to set a title, ballot title and submission clause, and summary for the Initiative, which proposed to repeal and reenact several provisions of article X, section 20 of the Colorado *531 Constitution (Amendment 1). The Board concluded that the Initiative failed the single subject requirement of article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, 1B C.R.S. (1995 Supp.). On February 22, 1996, proponents filed a motion for rehearing pursuant to section 1-40-107(1), 1B C.R.S. (1995 Supp.). At the rehearing on March 6, 1996, proponents maintained that the Initiative conformed with the single subject requirement.
In an effort to meet the single subject requirement, proponents offered alternative ballot title language. Proponents also asked the Board to determine whether a modification of the Initiative would necessitate a second review and comment period. The Board denied the motion. Proponents filed a petition for review of the final action of the Board on March 11, 1996. On April 15, 1996, proponents filed a motion requesting an expedited decision by this court.

II
Article V, section 1 of the Colorado Constitution reserves the initiative power to the registered electors of the state. Section 1(5.5) of article V provides in relevant part:
No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.
Colo. Const. art V, § 1(5.5). In 1994, the General Assembly enacted section 1-40-106.5, 1B C.R.S. (1995 Supp.), to implement the single subject requirement. The General Assembly intended "[t]o forbid the treatment of incongruous subjects in the same measure" and prevent voter fraud and surprise. § 1-40-106.5(1)(e)(I), (II), 1B C.R.S. (1995 Supp.). The General Assembly stated its intent that article V, section 1(5.5) "be liberally construed, so as to avert the practices against which [it is] ... aimed and, at the same time, to preserve and protect the right of initiative and referendum." § 1-40-106.5(2).
The single subject requirement eliminates "the practice of combining several unrelated subjects in a single measure for the purpose of enlisting support from advocates of each subject and thus securing the enactment of measures which might not otherwise be approved by voters on the basis of the merits of those discrete measures." In re Title, Ballot Title and Submission Clause, and Summary With Regard to a Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII (Petitions), 907 P.2d 586, 589 (Colo.1995) (In re Petitions); see also In re Title, Ballot Title, Submission Clause, and Summary Adopted April 5, 1995, by the Title Board Pertaining to a Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1078 (Colo.1995) (In re Public Rights in Waters II). To aid electors in the exercise of their right to initiate constitutional amendments, the Board must "fix a title, a ballot title and submission clause, and a summary for initiated petitions before they are signed by electors." In re Petitions, 907 P.2d at 589; In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Proposed Initiative On School Pilot Program, 874 P.2d 1066, 1069 (Colo.1994) (In re Sch. Pilot Program). The title setting process ensures that initiative reviewers and voters are fairly advised of the proposed amendment's import. In re Petitions, 907 P.2d at 589-90; In re Sch. Pilot Program, 874 P.2d at 1070.
The title of the proposed constitutional amendment "shall correctly and fairly express the true intent and meaning thereof...." § 1-40-106(3)(b), 1B C.R.S. (1995 Supp.). However, the Board is not required to describe every aspect of an initiative in the title and ballot title and submission clause. In re Petitions, 907 P.2d at 590; In re Title, Ballot Title, and Submission Clause Approved February 2, 1994, Respecting the Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of *532 Antonito, 873 P.2d 733, 739 (Colo.1994) (In re Limited Gaming/Antonito). The Board must "consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a `yes' or `no' vote will be unclear." § 1-40-106(3)(b), 1B C.R.S. (1995 Supp.); see also In re Petitions, 907 P.2d at 590; In re Limited Gaming/Antonito, 873 P.2d at 739. The Board shall draft an impartial summary, one not "likely to create prejudice, either for or against the measure." § 1-40-106(3)(a), 1B C.R.S. (1995 Supp.).
Any person dissatisfied with a title, ballot title and submission clause, and summary may file a motion for rehearing with the secretary of state. § 1-40-107(1), 1B C.R.S. (1995 Supp.). If the motion for rehearing is denied, the movant may seek review of the Board's action by this court. § 1-40-107(2), 1B C.R.S. (1995 Supp.); In re Petitions, 907 P.2d at 590; In re Sch. Pilot Program, 874 P.2d at 1070. On review of the Board's actions, we are "limited to ensuring that `the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board.'" In re Petitions, 907 P.2d at 590 (quoting In re Sch. Pilot Program, 874 P.2d at 1070). We will entertain all legitimate presumptions in favor of the Board's actions. Id.

III

A
Proponents contend that the Initiative does not violate the single subject requirement of article V, section 1(5.5) of the Colorado Constitution. We disagree.
"A proposed measure impermissibly includes more than one subject if its text relates to more than one subject and if the measure has at least two distinct and separate purposes which are not dependant upon or connected with each other." Id.; see also In re Public Rights in Waters II, 898 P.2d at 1078-79. Grouping the provisions of a proposed initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement. See In re Title, Ballot Title and Submission Clause, and Summary With Regard to a Proposed Petition for an Amendment to the Constitution to the State of Colorado Adding Subsection (10) to Section 20 of Article X (Amend Tabor 25), 900 P.2d 121, 125 (Colo.1995) (In re Amend Tabor 25) (concluding that umbrella of "revenue changes" did not sufficiently connect tax credit and ballot title procedural requirements); In re Public Rights in Waters II, 898 P.2d at 1080 (holding that water conservation district elections and "public trust" doctrine could not be grouped under the common characteristic of "water").
All initiatives must comply with the single subject requirement. Colo. Const. art V, § 1(5.5). Neither the constitutional language nor section 1-40-106.5 creates any exemptions for initiatives that attempt to repeal constitutional provisions. Also, no special permission exists for initiatives that seek to address constitutional provisions adopted prior to the enactment of the single subject requirement. On the contrary, article V, section 1(5.5) specifically states that "[n]o measure shall be proposed by petition containing more than one subject...." Section 1-40-106.5 requires "every constitutional amendment or law proposed by initiative ... be limited to a single subject...." We also note that it is well established that "measure" includes initiatives that either enact or repeal.[1]
*533 Proponents correctly note that "the Board's analysis should have been limited to whether the Initiative itself, not Amendment 1, constituted a single subject." Petitioner's Opening Brief at 8. Correspondingly, the Board contends that "[i]t is the fact that the measure to be amended or repealed contains multiple topics which is dispositive." Respondent's Answer Brief at 5. The underlying constitutional provision to be repealed must be examined in order to determine whether the repealing and reenacting initiative contains a single subject. If, for example, a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects. On the other hand, if an initiative proposes anything less than a total repeal, it may satisfy the single subject requirement.
We recently noted that Amendment 1 would not have met the single subject requirement of article V, section 1(5.5): "Amendment 1 itself was not subject to the single subject requirement and contains multiple subjects." In re Amend Tabor 25, 900 P.2d at 126. Similarly, the Legislative Council to the General Assembly found that Amendment 1 "included provisions relating to taxes, elections, state mandated programs, and spending and revenue limitations." Legislative Council of the Colorado General Assembly, An Analysis of 1994 Ballot Proposals, Research Publication No. 392, at 3 (1994). But see id. (stating also that Amendment 1 as a ballot proposal "in recent years... might be considered to include more than one subject") (emphasis added). Because the proposed Initiative does not seek a total repeal of Amendment 1, our dictum in In re Amend Tabor 25 does not dispose of the present case. Rather, we must examine the proposed Initiative to determine whether it satisfies the single subject requirement.

B
The Initiative proposes repealing topics related to spending and revenue limits, elections, local responsibility for state mandated programs, and emergency reserves. Proponents contend that each repealed subsection addresses the single subject of "limiting government spending." See, e.g., In re Petitions, 907 P.2d at 591 ("Although the Initiative is comprehensive, all of its numerous provisions relate to the single purpose of reforming petition rights and procedures."). However, the Initiative contains multiple subjects disconnected from any encompassing principle. See In re Amend Tabor 25, 900 P.2d at 125. The Initiative covers subjects ranging from the property valuation administrative process to elections to emergency taxes. "Limiting government spending" is too broad and general a concept to satisfy the single subject requirement, just as "water" was not a single subject in In re Public Rights in Waters II. See In re Public Rights in Waters II, 898 P.2d at 1080.
Proponents contend that requiring strict compliance with the single subject requirement to a repealing initiative precludes extensive modification of existing constitutional provisions. Constitutional provisions, especially those passed prior to the enactment of the single subject requirement, would be insulated from significant change. However, opponents of the single subject requirement, now codified at article V, section 1(5.5), similarly argued:
If several amendments are necessary to change various aspects of state government, for example a complex subject such as the personnel system, it may be important to include a number of topics within one proposal and to have a consensus of number of groups in order for the changes to be adopted. This proposal works against achieving system wide changes because complex reforms cannot realistically be accomplished on a piecemeal basis or in a series of elections.
Legislative Council of the General Assembly, An Analysis of 1994 Ballot Proposals, Research Publication No. 392, at 4 (1994). By passing the initiative, the voters rejected that argument. See also id. at 3 ("The type of proposals submitted by the legislature in recent years to remove obsolete provisions from the constitution might be considered to contain more than one subject. Under ... [the single subject requirement], these ballot issues might not have been allowed unless they were changed to reduce their scope.").

*534 IV
Alternatively, proponents contend that the Board abused its discretion by refusing to comment on whether revisions necessary to make the Initiative comply with the single subject requirement would be so substantial that an additional review and comment process would be required. Article V, section 1(5.5) of the Colorado Constitution provides:
In such circumstance [when a proposed measure contains more than a single subject], however, the measure may be revised and resubmitted for the fixing of a proper title without the necessity of review and comment on the revised measure in accordance with subsection (5) of this section, unless the revisions involve more than the elimination of provisions to achieve a single subject, or unless the official or officials responsible for the fixing of a title determine that the revisions are so substantial that such review and comment is in the public interest.

(Emphasis added.) Under article V, section 1(5.5), the Board possesses no duty to advise proponents concerning possible solutions to a single subject violation. If the Board rejects an initiative for violating the single subject requirement, then proponents may pursue two courses: 1) Proponents may commence a new review and comment process, or 2) Proponents may present a revised title to the Board. Comment by the Board is within its sound discretion. Requiring comment would unconstitutionally expand the Board's authority and shift initiative drafting responsibility from proponents to the Board. In the present case, article V, section 1(5.5) justifies the Board's discretionary silence regarding the changes necessary to satisfy the single subject requirement.

V
Because the Initiative violates the single subject requirement of article V, section 1(5.5) of the Colorado Constitution, we approve the Board's refusal to set the title, ballot title and submission clause, and summary for the Initiative.
MULLARKEY, J., concurs in the result and KOURLIS and HOBBS, JJ., join in the concurrence.

APPENDIX A
Be it Enacted by the People of the State of Colorado: Article X, Section 20 of the Colorado Constitution is repealed and is reenacted as follows:
The Taxpayer's Bill of Rights. (a) Term Definitions. Within this section:
(i) "District" means the state or any local government.
(ii) "Emergency" excludes economic conditions, revenue shortfalls, or district salary or fringe benefit increases.
(b) General. Starting November 6, 1996, unless paragraph (c) or (d) below applies, districts must have voter approval in advance for any new tax, tax rate increase, mill levy above that for the prior year, valuation for assessment ratio increase for a property class, or extension of an expiring tax, or a tax policy change directly causing a net tax revenue gain to any district.
(c) Suspension of Vote in Certain Instances. When annual district revenue is less than annual payments on general obligation bonds, pensions, and final court judgments, paragraph (b) shall be suspended to provide for the deficiency.
(d) Emergency Taxes. This paragraph grants no new taxing power. Emergency property taxes are prohibited. Emergency taxes shall also meet all of the following conditions:
(i) A 2/3 majority of the members of each house of the general assembly or of a local district board declares the emergency and imposes the tax by separate recorded roll call votes.
(ii) Emergency tax revenue shall be refunded within 180 days after the emergency ends if not spent on the emergency.
(iii) A tax not approved on the next election date 60 or more days after the declaration shall end with that election month.

*535 Title Rewrite: Proposed Initiative "1996-4"

An Amendment to the Colorado Constitution concerning Article X, Section 20 retaining the current requirement that districts must have voter approval in advance for any new tax, tax rate increase, mill levy above that for the prior year, valuation for assessment ratio increase for a property class, or extension of an expiring tax, or a tax policy change directly causing a net revenue gain to any district, and in connection therewith repealing all the other provisions of Article X, Section 20 of the Colorado Constitution including: limitations on the rate of increase in state and local government spending; the requirement that state and local governments establish an emergency reserve; restrictions on property, income, and other taxes; the voter approval requirement for multiple-fiscal year debt and financial obligations; election procedures for seeking voter approval; the restriction on state government requiring local governments to pay for state mandated programs.
Justice MULLARKEY concurring in the result:
The majority holds that the initiative in question, Initiative 1996-4 (Initiative), which seeks to repeal article X, section 20 of the Colorado Constitution (Amendment 1) and to reenact certain portions thereof, violates the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, 1B C.R.S. (1995 Supp.). The majority reaches this conclusion by determining that "[i]f, for example, a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects." Maj. op. at 533. However, the majority finds that because the Initiative proposes to only partially repeal Amendment 1, it must determine whether the parts sought to be repealed comprise more than one subject. The majority finds that the parts sought to be repealed do comprise more than one subject and approves the action of the title setting board (Board) in refusing to set a title, ballot title and submission clause, and summary for the Initiative.
I agree with the majority's result but I do not agree with the majority's reasoning that the Initiative violates the single-subject requirement because it seeks to repeal a constitutional provision that comprises more than one subject. The threshold question, which is not addressed by the majority, is whether the single-subject requirement applies to a repeal. I would hold that it does not. However, because this Initiative would repeal a constitutional provision and also enact another provision in its place, I would find a violation of the single-subject requirement. Accordingly, I concur in the result reached by the majority and write separately to set forth my single-subject analysis.
In 1994, the General Assembly referred a measure to the electorate proposing that the single-subject requirement, already applicable to legislative bills, be extended to cover referred and initiated measures. The text of the proposal, now found in article V, section 1(5.5) of the Colorado Constitution, reads as follows:
No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls. In such circumstance, however, the measure may be revised and resubmitted for the fixing of a proper title without the necessity of review and comment on the revised measure in accordance with subsection (5) of this section, unless the revisions involve more than the elimination of provisions to achieve a single subject, or unless the official or officials responsible for the fixing of a title determine that the revisions are so substantial that such review and comment is in the public interest. The revision and resubmission of a measure in accordance with this subsection (5.5) shall not operate to alter or extend *536 any filing deadline applicable to the measure.
The text of the proposal makes no reference to repeal. Likewise, the ballot title for that measure did not refer to repeal. It stated as follows:
An amendment to articles V and XIX of the Constitution of the State of Colorado, requiring that any measure proposed by initiative or referendum be confined to a single subject.
Legislative Council of the Colorado General Assembly, An Analysis of 1994 Ballot Proposals, Research Pub. No. 392, at 2 (1994) (An Analysis of 1994 Ballot Proposals).
Thus, the voters were not on notice from either the text or the ballot title that this proposed amendment would apply to an attempt to repeal an existing constitutional provision or law. Nor did the legislature's reference to "measure" give implied notice to the voters. "Measure" here is not used in the commonly understood meaning of the word. Webster's lists the applicable definition, "a proposed legislative act," as the eighth definition of "measure." Webster's Third New International Dictionary 1399-1400 (3d ed. 1986). The word "act" gives no suggestion that it includes a repeal. Id. at 20.
The majority finds that the single-subject requirement applies here because of the following discussion in the "Arguments Against" the referred measure proposing the single-subject requirement in the Legislative Council's "blue book":
If several amendments are necessary to change various aspects of state government, for example a complex subject such as the personnel system, it may be important to include a number of topics within one proposal and to have a consensus of a number of groups in order for the changes to be adopted. This proposal works against achieving system wide changes because complex reforms cannot realistically be accomplished on a piecemeal basis or in a series of elections.
An Analysis of 1994 Ballot Proposals at 4. However, this argument against the referred single-subject measure does not address the repeal-by-initiative situation. Nor is the repeal of constitutional provisions addressed elsewhere in the Legislative Council's "blue book" other than in the following oblique reference:
The type of proposals submitted by the legislature in recent years to remove obsolete provisions from the constitution might be considered to contain more than one subject. Under the [single-subject requirement], these ballot issues might not have been allowed unless they were changed to reduce their scope.
Id. at 3. The above-quoted passage does not support the majority's conclusion because it applies to referred measures seeking to repeal more than one obsolete constitutional provision rather than an initiative seeking to repeal one constitutional provision.[1] Moreover, the analysis is of little help because it is carefully couched to avoid taking a definitive position on the effect of the single-subject requirement.
When we construe a constitutional amendment, "we should ascertain and give effect to the intent of those who adopted it." Urbish v. Lamm, 761 P.2d 756, 760 (Colo.1988). It is our obligation, therefore, to ensure that we interpret the single-subject requirement, as it applies to initiated and referred measures, according to what the voters "believed the amendment to mean when they accepted it as their fundamental law." Id. Under these guidelines, we give the words used in our Constitution their "natural and popular meaning usually understood by the people who adopted them." Id.
*537 I recognize that the voters can be and are asked to consider referred amendments or initiatives involving technical terms or words that carry special meaning. However, in such circumstances, this court has been careful to require that voters are fully apprised.[2] For example, in In re Proposed Initiative on Parental Notification of Abortions for Minors, 794 P.2d 238 (Colo.1990), we struck a title, ballot title and submission clause because it did not inform voters that the text of the proposed initiative changed the legal definition of when human life begins. If the single-subject requirement was meant to apply to repeals, that was not disclosed to the voters. Given such lack of notice, I would not interpret the single-subject requirement as applicable to a repeal of a constitutional provision. To interpret the single-subject requirement, as the majority does, improperly infringes upon the voters' power of initiative.
Here, the majority's conclusion that "measure" includes "repeal" is based on In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333 (1913) (Senate Resolution No. 4). Maj. op. at 532 n. 1. Without citing any authority, this court developed that definition in Senate Resolution No. 4 in the context of interpreting the following sentence found in the Initiative and Referendum section of the Colorado Constitution:
This section shall not be construed to deprive the general assembly of the right to enact any measure.
Colo. Const. Art. V, § 1. The court adopted this definition of "measure" in order to permit the legislature to repeal an initiated law. Senate Resolution No. 4, 54 Colo. at 270, 130 P. at 336. In the same opinion, this court held that there is no judicial review of the legislature's decision to add an emergency clause to an act, thereby insulating that act from voter review by referendum. Id. at 270-71, 130 P. at 336. The net effect of this court's decision was to permit the legislature to repeal an initiated law without the consent of the voters.
This decision has had unfortunate consequences. First, the initiative power has been used almost exclusively to enact constitutional amendments rather than statutes because the legislature cannot change or repeal a constitutional provision without the consent of the voters. As a result, our constitution contains many detailed provisions that are statutory in nature. Second, the power of referendum has been drastically undercut.
I cannot endorse or support the extension of In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333, to the case now before us. In my view, the majority's decision will lead to undesirable results just as Senate Resolution No. 4 did. For example, we have held in In re Proposed Ballot Initiative on Parental Rights, 913 P.2d 1127 (Colo.1996), that the voters have the right to adopt a provision embodying broad constitutional principles. Under the majority's ruling, those same voters may not be able to later remove the provision from the constitution by a single initiative if its effects are indeed far-reaching. If the electorate can adopt such a provision in one initiative, it certainly should be empowered to repeal it in another. Next, the majority's conclusion effectively freezes those parts of the constitution that predate the single-subject requirement and encompass more than one subject.[3]
Last, it is important to recognize that multiple subject constitutional amendments may still be enacted. If a proposed initiative containing multiple subjects is not challenged before it is placed on the ballot, the single-subject *538 requirement does not mandate the measure's invalidation after adoption. Article V, section 1(5.5) of the constitution provides that the "measure shall be void only as to so much thereof as shall not be so expressed" in its title. Thus, if, as in In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076 (Colo.1995), the proposal contains two subjects and both are expressed in the title, article V, section 1(5.5) would provide no relief after the proposal is adopted. The impact of the majority's opinion is not necessarily limited to constitutional provisions or laws which predate adoption of the single-subject requirement.
Even if the majority is correct that the single-subject requirement is applicable in a repeal situation, I would still conclude that an initiative seeking to repeal a constitutional provision in its entirety does not abrogate that requirement regardless of the nature of the underlying provision. In order to ascertain whether an initiative violates the single-subject requirement, we look to the purpose of the initiative before us. In particular, we must determine whether the matters encompassed by the initiative are germane and connected to each other so as to create a cohesive whole. See In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 25, 900 P.2d 121, 125 (Colo.1995). As part of this pre-election review process, we do not interpret the measure, determine how it will be applied if adopted, or assess its merits. In re Proposed Initiative Concerning "Automobile Coverage", 877 P.2d 853, 856 (Colo.1994). In short, we do not envision all of the future reverberations that will ensue if an initiative is adopted.
If the Initiative before us were aimed solely at the repeal of Amendment 1, which is Article X, section 20 of the Colorado Constitution, that would constitute its singular unifying purpose. The Initiative's direct effect would be readily apparent from its face, i.e., the repeal of a pre-existing constitutional provision. Thus, the repeal of a constitutional provision has a narrowly circumscribed objective. In contrast to the majority, I would not find that such a focused purpose violates the single-subject requirement.
Nonetheless, I concur in the result reached by the majority because to both repeal and reenact selected portions of Amendment 1 is a clear violation of the single-subject requirement. Specifically, the Initiative contains "more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other." In re Title, Ballot Title and Submission Clause, and Summary Regarding Petition Procedures, 900 P.2d 104, 109 (Colo. 1995). Here, the Initiative's two distinct purposes are to repeal certain portions of Amendment 1 and reenact or preserve other portions. These two purposes are neither dependent upon nor connected to each other. Such an amalgamation could very well lead to voter confusion. Moreover, if some voters wish to repeal Amendment 1 in its entirety and not reenact any of its provisions, those voters may feel constrained to vote for the measure regardless of the reenactment provisos. The Initiative creates the very log-rolling effect that the single-subject requirement is aimed at eradicating. See § 1-40-106.5(1)(e)(I), 1B C.R.S. (1995 Supp.); In re Proposed Initiative "Public Rights in Waters II", 898 P.2d at 1079. In contrast, these problems are not engendered by an initiative that would seek to repeal all of Amendment 1.
In my view, the proponents can only achieve their goals by initiating two separate measures. First, by an initiative repealing all of Amendment 1. Second, by an initiative reenacting those portions of Amendment 1 that the proponents seek to preserve, assuming that the reenacted provisions comply with the single-subject requirement.
For all the foregoing reasons, I concur in the result reached by the majority. I therefore would approve for different reasons the action of the Board in refusing to set a title, ballot title and submission clause, and summary for the Initiative.
KOURLIS and HOBBS, JJ., join in this concurrence.
NOTES
[1] Section 1-40-106.5(3) provides that "the initiative title setting review board created in section 1-40-106 should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills." In In re Senate Resolution No. 4, 54 Colo. 262, 270, 130 P. 333, 336 (1913), we stated that "[a]n act repealing an act is a measure, and, as the general assembly is not deprived of the right to enact any measure, it clearly has the power to repeal any statute law, however adopted or passed." See also Colo. Const. art V, § 1(4) ("This section shall not be construed to deprive the general assembly of the power to enact any measure.")
[1] For example, in 1990, the General Assembly submitted to the electorate an amendment to articles IV, VII, XI, XIII, and XVIII of the Colorado Constitution concerning the repeal of a number of obsolete constitutional provisions. The constitutional provisions covered a range of subjects from a provision stating that no financial aid could be appropriated by the state for the 1976 Winter Olympics to a provision stating that anyone participating in a duel is automatically disqualified from holding office. See H. Concurrent Res. 90-1006, 1990 Colo. Sess. Laws 1861-62. Whether this type of housekeeping amendment is prohibited by the single-subject requirement is not before us and I would not address it.
[2] In the text, I discuss the majority's reliance on In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333 (1913). It is unreasonable to expect that In re Senate Resolution No. 4 gave fair notice to the voters of this court's unusual definition of the word "measure."
[3] Under the majority's interpretation, voters, dissatisfied with a constitutional provision that violates the single-subject requirement, could not repeal such a provision with one initiative but would be required to repeal it in a piecemeal fashion. This limits the electorate's ability to repeal by initiative and could lead to absurd results. For example, while some portions of the constitutional provision might be repealed, others might remain which are dependent upon the repealed portions. Delays in the title-setting process might prevent one of the measures, seeking to repeal a portion of a constitutional provision, from getting on the ballot while its complement, repealing another portion of the constitutional provision, does get placed on the ballot.