In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE FOR 2005–2006 # 74,

Beverly Ausfahl and Nicole Kemp, objectors, Petitioners,

v.

Jon Caldara and Dennis Polhill, proponents, Respondents,

and

William A. Hobbs, Allison Eid, and Sharon L. Eubanks, Title Board.

No. 06SA41.

Supreme Court of Colorado.

May 30, 2006.

Isaacson Rosenbaum, P.C., Edward T. Ramey, Denver, for Petitioners.

No appearance on behalf of Jon Caldara and Dennis Polhill, Proponents.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Public Officials Unit, Denver, for Title Board.

RICE, Justice.

Petitioners Beverly Ausfahl and Nicole Kemp (Petitioners) brought this original proceeding under section 1–40–107(2), C.R.S. (2005), to review the action of the Title Board (Board) in fixing a title and a ballot title and submission clause for a ballot initiative (Initiative # 74) for the 2006 general election. Petitioners contend that Initiative # 74 addresses multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. We hold that the proposed initiative contains more than one subject in violation of the Colorado Constitution, and therefore the Title Board should have refused to fix the titles. Accordingly, we reverse the Title Board's action.

## I. Facts

Initiative # 74 imposes expiration dates upon all of the governmental actions for which voter approval is required under article X, section 20 of the Colorado Constitution (Amendment 1) [1]. Specifically, any ballot issue that must adhere to Amendment 1 must sunset, expire, and end within ten years of its passage. In addition, any such ballot issue

may be renewed only once by a vote of the people, but not for longer than a period of ten years. As noted in the Initiative, the "preferred interpretation shall prevent one generation's decision to increase tax or debt from burdening future generations without future generations direct voting consent."

The Title Board conducted its initial public meeting and set a title, ballot title, and submission clause for the proposed initiative. Petitioners filed a Motion for Rehearing, objecting that the proposed initiative contained multiple subjects. The Motion for Rehearing was heard at the next regularly scheduled meeting of the Title Board. At the rehearing, the Title Board overruled Petitioners' objection. Petitioners then sought review in this court.

## II. Law

### A. The "Single–Subject" Provision

■ This case involves the application of the single-subject limitation to initiatives.[2] Despite our limited role,[3] we have been asked on numerous occasions to determine whether or not a proposed initiative contains a single subject. To this end, we have developed principles by which we review the decisions of the Title Board,[4] with whom the responsibility resides to initially review all proposed initiatives.[5] Primary among these principles

---

1. Section 20 of article X of the Colorado Constitution, titled the Taxpayers's Bill of Rights, is also commonly known as Amendment 1.

2. The General Assembly sought to extend the single-subject/clear title limitation applicable to bills to proposed initiatives by way of a referred constitutional amendment. The language of the proposed amendment mirrored the language of article V, section 21 of the Colorado Constitution insofar as it sought to prohibit initiatives from containing more than a single subject, which must be expressed clearly. The General Assembly referred this constitutional amendment to the voters as "Referendum A" on the 1994 general election ballot. It was approved and became effective upon proclamation by the Governor on January 19, 1995. In re "Public Rights in Waters II," 898 P.2d 1076, 1078 (Colo.1995).

3. We may not address the merits of a proposed initiative or suggest how an initiative might be applied if enacted; however, we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initia-

tive proposals containing multiple subjects has been violated. In re Proposed Initiative for 1999–2000 # 29, 972 P.2d 257, 260 (Colo.1999).

4. In reviewing the Board's actions setting the title and ballot title and submission clause, "we will engage in all legitimate presumptions in favor of the propriety of the Board's actions." In re Petition Procedures, 900 P.2d 104, 108 (Colo.1995). At the same time, "we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated." In re 1997–98 # 84, 961 P.2d 456, 458 (Colo.1998); In re 1997–98 # 30, 959 P.2d 822, 825 (Colo.1998).

5. In order to facilitate the initiative process, the General Assembly assigned duties to the Title Board which include: (1) "designat[ing] and fix [ing] a proper fair title for each proposed law or constitutional amendment, together with a submission clause," § 1–40–106(1), C.R.S. (2005); (2) "consider[ing] the public confusion that might be caused by misleading titles and ...

is the axiomatic concept that, in order to pass constitutional muster, a proposed initiative must concern only one subject—that is to say it must effect or carry out only one general object or purpose.[6]

To evaluate whether or not an initiative effectuates or carries out only one general object or purpose, we look first to the text of the proposed initiative. The single-subject requirement is not violated if the "matters encompassed are necessarily or properly connected to each other rather than disconnected or incongruous." *In re Amend Tabor 25*, 900 P.2d 121, 125 (Colo.1995); *see In re "Public Rights in Waters II"*, 898 P.2d 1076, 1078–79 (Colo.1995). Said another way, the single-subject requirement is not violated unless the text of the measure "relates to more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other." *In re Petition Procedures*, 900 P.2d 104, 109 (Colo.1995); *see People v. Sours*, 31 Colo. 369, 405, 74 P. 167, 178 (1903).

Mere implementation or enforcement details directly tied to the initiative's single subject will not, in and of themselves, constitute a separate subject.[7] Finally, in order to pass the Single-subject test, the subject of the initiative should be capable of being clearly expressed in the initiative's title.[8]

## B.  Review of Prior "Amendment 1" Initiatives

We must decide whether Initiative # 74 contains multiple subjects consistently with our prior case law. To this end, we first review our cases concerning Amendment 1.

We start our analysis with *In re Amend Tabor 25*, 900 P.2d 121 (Colo.1995). In this case, the proponents of the initiative sought to add a new subsection to Amendment 1. *In re Amend Tabor 25*, 900 P.2d at 121–23. The Initiative proposed to establish a tax credit and set forth several procedural requirements for future ballot titles. *Id.* The proponents of the Initiative claimed that the proposed measure comprised a single subject, "government revenue changes." *Id.* at 125. We held that, "because the proposed $40 tax credit is not 'dependent upon or connected' to procedures for adopting future initiatives, we find the very evils that the electorate determined must be avoided by adoption of article V, section 1(5.5) are present here." *Id.*

Shortly thereafter, we again considered an attempt to amend Amendment 1 by petition. *In re Amend Tabor # 32*, 908 P.2d 125 (Colo. 1995). This proposed initiative sought to establish a tax credit that would apply to six state or local taxes and would require the state to replace local revenues that were lost

---

whenever practicable, avoid[ing] titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear," § 1–40–106(3)(b); (3) not permitting "the treatment of incongruous subjects in the same measure," § 1–40–106.5(1)(e)(I); and (4) acting to "prevent surreptitious measures and appris[ing] the people of the subject of each measure by the title" in order to "prevent surprise and fraud from being practiced upon voters," § 1–40–106.5(1)(e)(II).

Section 1–40–106.5(3) provides that "the initiative title setting review board created in section 1–40–106 should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills." *See In re Proposed Initiative 1996–4*, 916 P.2d 528, 532 (Colo.1996).

6.  *See In re Amend Tabor 25*, 900 P.2d 121, 125 (Colo.1995); *In re Petition Procedures*, 900 P.2d 104, 109 (Colo.1995); *In re "Public Rights in Waters II"*, 898 P.2d 1076, 1079 (Colo.1995).

7.  *See In re Initiative for 1997–98 # 113*, 962 P.2d 970, 971–72 (Colo.1998) (per curiam) (upholding the titles and summary for a proposed initiative to limit pollution from hog farms, including its implementation measures and provisions for reporting waste disposal information to the Health Department); *In re Proposed Initiative "Petitions"*, 907 P.2d 586, 591 (Colo.1995) (determining that a proposed initiative establishing comprehensive rules governing petitions did not violate the single-subject requirement by its inclusion of detailed procedures and its authorization for citizen lawsuits to ensure compliance).

8.  *See* Colo. Const. art. V, § 1(5.5); *see also* § 1–40–106.5, C.R.S. (2005) ("No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title.... If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.").

because of the tax credit provision. *Id.* at 129. The petitioners contended that the initiative violated the constitutional single-subject requirement because it applied the tax credit to more than one tax and also required the state to replace monthly local government revenues. *Id.* at 128–29. We disagreed and held:

> Although the Initiative applies the tax credit to more than one tax, the single purpose of the Initiative is the implementation of a tax credit. All six taxes are connected to the same tax credit and are bound by the same limitations. The provision of the Initiative requiring mandatory replacement of lost local government revenues is dependent upon and closely connected to the $60 tax credit. The Initiative relates to a single definite object or purpose and does not impermissibly encompass multiple unrelated subjects.

*Id.* at 129.

We next considered *In re Proposed Initiative 1996–4,* 916 P.2d 528 (Colo.1996). This initiative sought to repeal certain portions of Amendment 1 related to spending and revenue limits, elections, local responsibility for state mandated programs, and emergency reserves, and to reenact certain portions of the Amendment. *In re Proposed Initiative 1996–4,* 916 P.2d at 533. The proponents contended that each repealed subsection addressed the single subject of "limiting government spending." *Id.* We held, however, that the initiative contained multiple subjects disconnected from any encompassing principle because the initiative covered subjects ranging from the property valuation administrative process to elections to emergency taxes. *Id.* " 'Limiting government spending' is too broad and general a concept to satisfy the single subject requirement, just as 'water' was not a single subject in *In re Public Rights in Waters II.*" *Id.* (citing *In re Public Rights in Waters II,* 898 P.2d at 1080).

During the next election cycle, we were again asked to consider proposed changes to Amendment 1. *In re 1997–98 # 30,* 959 P.2d 822 (Colo.1998). Initiative # 30 sought to change Amendment 1 by creating an annually increasing reduction in tax revenue upon which municipalities, school districts, and various special districts depend to fund local programs. *Id.* at 823. Revenues affected would have included those from utility customer and franchise charges, vehicle ownership taxes, and property taxes that fund human and health services, district attorney and assessors offices, libraries, courts, schools, economic development, enterprises, and authorities. *Id.* The shortfall in local programs caused by the tax cuts would have been funded by the transfer of state revenues to local governments. *Id.*

In addition, Initiative # 30 proposed to add new criteria to Amendment 1 by providing that voter-approved revenue and spending increases enacted since 1992 were to specify a maximum tax rate with a fixed maximum number of dollars in the ballot title of those measures. *Id.* at 824.

The Board contended that the initiative had a single subject, "tax cuts." *Id.* at 826. We disagreed. We held that, although a tax cut was one of the purposes of the initiative, the initiative also proposed to subject voter-approved local revenue and spending increases enacted since 1992 to a new Amendment 1 requirement—that a fixed tax rate/maximum dollar amount must be stated in the ballot title of those measures. *Id.* Thus, we concluded that, because the initiative contained two subject matters, a tax cut and new criteria for voter approval of revenue and spending increases under Amendment 1, the proposed initiative violated the single-subject limitation. *Id.* at 827.

Shortly thereafter, we considered two more proposed initiatives which were somewhat similar to the initiative discussed in *In re 1997–98 # 30. See In re Proposed Initiative for 1997–98 # 84,* 961 P.2d 456 (Colo. 1998). These initiatives sought to change Amendment 1 by lowering various state and local taxes and requiring the state to replace affected local revenue loss. *Id.* at 457. Under the proposed changes, the state's revenue replacement obligation was subject to all tax and spending limits. *Id.*

Like with Initiative # 30, the Title Board argued that the only subject encompassed in these initiatives was "tax cuts." *Id.* at 459. We disagreed again, however, because the

initiatives required the state to dedicate a portion of the state's current revenues to replace lost local revenue, which would have the effect of lowering the amount the state could spend on state programs. *Id.* at 460. Accordingly, we held:

> Properly viewed, then, Initiative # 84 and Initiative # 85 violate the single subject requirement.... Initiative # 84 and Initiative # 85 still contain more than one subject. First, the initiatives provide for tax cuts. Second, the initiatives impose mandatory reductions in state spending on state programs. These two subjects are distinct and have separate purposes. While requiring the state to replace affected local revenue in itself sufficiently relates to a tax cut, requiring the state separately to reduce its spending on state programs is not "dependent upon and clearly related" to the tax cut.[9]

*Id.*

## C. Application of Law to this Initiative

█ The proponents of this initiative assert, and the Title Board agrees, that the text of this initiative contains only one general subject—time limits for ballot issues that would raise, continue, create, or increase taxes. Indeed, the text of the initiative seems, on its face, to concern only a single purpose or object, namely to require that "any ballot issue that raises a tax rate, continues a tax that would otherwise expire, creates a new tax, or increases public indebtedness ... sunset, expire, and end within ten years of its passage."

Petitioners claim, however, that instead of containing one unified, general subject, this initiative contains at least three distinct unconnected topics, namely, applying a ten year

expiration period to election results approving (a) tax measures; (b) public debt authorizations; and (c) the authority to spend rather than refund available revenues.

This case, then, raises the difficult question associated with the interpretation of single-subject jurisprudence, namely, when are the characteristics of an initiative too discreet and unconnected to pass constitutional muster, despite the breadth of general topic proposed by the proponent? In reliance upon the case law we just reviewed, we conclude that this proposed initiative has more than a single subject and is therefore unconstitutional.

In so holding, we rely primarily on *In re Amend Tabor # 25,* which is directly on point. As noted above, the petitioners, claiming that the single subject of the petition was "revenue changes," proposed to modify Amendment 1 in several different ways, to establish a tax credit and to add various procedural requirements for future ballot titles. *In re Amend Tabor # 25,* 900 P.2d 121, 125 (Colo.1995). These changes involved both tax and revenue increase ballot titles. *See id.*

The Title Board asserted that the *Amend Tabor # 25* initiative properly constituted a single subject because it proposed an amendment to an already existing constitutional provision. *Id.* at 126. As an existing amendment to our Constitution, the Title Board further argued that Amendment 1 was itself a single subject, and that any initiative which sought to clarify the limits placed by the Amendment on the ability of the legislature to spend and raise revenues was likewise a single issue measure. *Id.* We disagreed, holding that Amendment 1 itself contains multiple subjects.[10] *Id.*

9. *See also In re Proposed Initiative for 1997–1998 # 86,* 962 P.2d 245, 247–48 (Colo.1998) ("Like the initiatives at issue here, Initiatives # 84 and # 85 would have established state and local tax cuts to increase in subsequent years, and also provided that 'the state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, *within all tax and spending limits.'* ... Because Initiatives # 86 and # 87 contain the exact same language as provided in Initiatives # 84 and # 85, providing for tax cuts and requiring the state to replace local government revenue affect-

ed by the tax cuts 'within all tax and spending limits,' we hold that Initiatives # 86 and # 87 violate the single subject requirement and, therefore, are unconstitutional."). *See generally In re Proposed Initiative for 1999–2000 # 25,* 974 P.2d 458 (Colo.1999).

10. *See In re Amend Tabor # 25,* 900 P.2d at 126 ("The Legislative Council's Analysis of 1994 Ballot Proposals, Research Publication No. 392 at 3, identified Amendment 1 as a ballot proposal which probably includes more than one subject and which, under the single subject requirement

Like the proposed initiative analyzed in *Amend Tabor # 25,* the initiative in this case imposes a ten-year expiration, or "sunset," date upon "every ballot issue that must adhere" to the voter approval requirement of article X, section 20 of the Colorado Constitution. Thus, this initiative, just like the *Amend Tabor # 25* initiative, seeks to join under the rubric of "time limits for taxes," measures which refer to both tax and debt measures and necessarily incorporate voter approved relief from spending limits.

Our holding is likewise consistent with the *Initiative 1996–4* case. There, the proponents, under the rubric of "limiting government spending," sought not only to repeal Amendment 1 but also to reenact certain parts of it. *In re Proposed Initiative 1996–4,* 916 P.2d 528, 533 (Colo.1996). Relying on our *Amend Tabor # 25* case, we again held that Amendment 1 would not have met the single-subject requirement of the Constitution. *Id.* We went on to hold that since the proposed initiative sought to repeal portions of Amendment 1 relating to spending and revenue limits, elections, local responsibility for state mandated programs, and emergency reserves, the characterization of the subject of the initiative—limiting government spending—was too broad and general to satisfy the single-subject requirement. *Id.*

Similarly, in *In re 1997–98 # 30,* the proponents sought to change Amendment 1 by subjecting voter-approved local revenue and spending increases enacted since 1992 to a new Amendment 1 requirement—that a fixed tax rate/maximum dollar amount must be stated in the ballot title of those measures. 959 P.2d 822, 824 (Colo.1998). They suggested that the single subject of this initiative was "tax cuts." *Id.* at 826. We disagreed, however, and again noted that Amendment 1 placed revenue limitations as well as spending limitations on state and local governments, and that these provisions operated separately and independently. *Id.* Discussing *Amend Tabor # 25,* we noted that because Amendment 1 contained multiple sub-

jects, any initiative proposing to amend both the revenue and the spending limitation in Amendment 1 likewise contained multiple subjects. *Id.*

In short, rather than presenting the single subject of "time limits for ballot issues authorized by article X, Section 20," Initiative # 74 presents multiple subjects: (1) time limits for tax measures; (2) time limits for public debt authorizations; and (3) time limits for voter-authorized relief from spending limits. While voters may well be receptive to a broadly applicable ten-year limitation upon the duration of tax increases, they may not realize that they will be simultaneously limiting their ability to incur multiple-fiscal year district debt obligation to fund public projects. While either or both tax or debt limitations may be attractive, the voters would also be limiting prospectively the duration of all future ballot issues designed to provide relief from Amendment 1's wholly independent spending caps. Certainly, the voters are entitled to have each of these separate subjects considered upon its own merits.

For this reason, the proposed initiative violates the constitutional provision against single subjects and cannot stand.

Justice COATS dissents.

Justice EID does not participate.

### Ballot Title Setting Board

### Proposed Initiative 2005–2006 # 74 [1]

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning a limitation on the number of years that a ballot issue approved by the voters under section 20 of article X shall remain in effect, and, in connection therewith, providing that any ballot issue that increases a tax or public indebtedness or takes other action under section 20 of article X that is passed by the voters on or after December 31, 2006, must sunset, expire, and end within ten years of passage of the ballot

of article V, section 1(5.5), 'might not have been permitted unless [it was] changed to reduce its scope.' ").

---

1. 'Unofficially captioned "**Expiration of Voter–Approved TAB OR Issues**" by legislative staff for tracking purposes. Such caption is not part of the titles set by the Board.

issue and allowing the ballot issue to be renewed for up to ten years by a:subsequent vote of the people.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning a limitation on the number of years that a ballot issue approved by the voters under section 20 of article X shall remain in effect, and, in connection therewith, providing that any ballot issue that increases a tax or public indebtedness or takes other action under section 20 of article X that is passed by the voters on or after December 31, 2006, must sunset, expire, and end within ten years of passage of the ballot issue and allowing the ballot issue to be renewed for up to ten years by a subsequent vote of the people?

*Hearing January 18, 2006:*

*Single subject approved; staff draft amended; titles set.*

*Hearing adjourned 2:20p.m.*

*Hearing February 1, 2006:*

*Motion for Rehearing denied*

*Hearing adjourned 2.28 p.m.*

**Be it Enacted by the People of the State of Colorado:**

Section 20 of article X of the constitution of the state of Colorado is amended BY THE ADDITION OF A NEW SUBSECTION to read:

(10) **TERM LIMITS FOR TAXES.** (A) THIS SUBSECTION TAKES EFFECT DECEMBER 31, 2006. THE PREFERRED INTERPRETATION SHALL PREVENT ONE GENERATION'S DECISION TO INCREASE TAX OR DEBT FROM BURDENING FUTURE GENERATIONS WITHOUT FUTURE GENERATIONS' DIRECT VOTING CONSENT.

(B) ANY BALLOT ISSUE THAT RAISES A TAX RATE, CONTINUES A TAX THAT WOUU) [WOULD] OTHERWISE EXPIRE, CREATES A NEW TAX, OR INCREASES PUBLIC INDEBTEDNESS, OR ANY OTHER BALLOT ISSUE THAT MUST ADHERE TO THIS SECTION PASSED AFTER DECEMBER 31 2006 MUST SUNSET, EXPIRE, AND END WITHIN TEN YEARS OF ITS PASSAGE. SUCH BALLOT ISSUE MAY BE RENEWED BY A SUBSEQUENT VOTE OF THE PEOPLE, BUT NOT FOR LONGER THAN 10 YEARS.

Justice COATS, dissenting.

Once again the majority deprives the voters of an opportunity to express themselves on a proposal to limit public fundraising. And once again its action is premised on some variation of the theme that public fundraising by taxation and public fundraising by borrowing are separate subjects, unable to be considered by the voters in a single initiative. Because I can find no principled basis for treating the identical limitation on taxation and public indebtedness presented here as different subjects, I would not extend our prior reliance on this distinction to the particulars of the current proposal. I therefore respectfully dissent.

As the majority itself acknowledges, the single-subject limitation on initiatives was a direct outgrowth of, and embodies the same purposes as, the single subject limitation on legislation already found in article V, section 21 of the state constitution. *See* § 1–40–106.5, C.R.S. (2005). Subject to judicial review, the title board is entrusted with the obligation to ensure that popularly initiated measures contain a single subject. § 1–40–106.5(3). Although the language of the constitutional limitation itself might appear at first blush to leave the board with tremendous discretion to disapprove initiatives as exceeding that limitation, *see* Colo. Const. art. V, § 1(5.5), both case law and legislative history make clear that this provision must be understood as directed against two specific evils: 1) increasing voting power by combining measures that could not be carried on their individual merits, *Catron v. Bd. of County Comm'rs,* 18 Colo. 553, 557, 33 P. 513, 514 (1893); § 1–40–106.5(1)(e)(I); and 2) surprising voters by surreptitiously including unknown and alien subjects "coiled up in the folds" of the proposal, *In re Breene,* 14 Colo. 401, 404, 24 P. 3, 4 (1890); § 1–40–106.5(1)(e)(II). *See In re Ballot Title 2001–2002 # 43,* 46 P.3d 438, 440 (Colo.2002) (Rice,

J.); *In re Ballot Title 2003–2004 # 32*, 76 P.3d 460, 471 (Colo.2003) (Coats, J., dissenting).

The majority makes no attempt to relate its finding of multiple subjects to these purposes, and instead simply concludes that the proposal at issue in this case contains subjects that are not sufficiently "dependent upon" or "connected with" each other because a similar distinction had been made with regard to other public funding proposals in the past. Maj. op. at 239. Whatever the merits of those prior holdings, given the complexity and potential for misunderstanding of the individual proposals in those cases, it is clear (at least to me) that neither danger meaningfully threatens the current proposal. The proposed initiative in this case consists of two short paragraphs of two sentences each, and it is closely paraphrased in a single sentence, with the addition of a cross-reference to the TABOR amendment, in the title fixed by the board. Both the proposed initiative and the title expressly and clearly state that the proposal would limit the effective life of any ballot issue increasing either taxes or public indebtedness.

The proposed time limitation on the effective life of public fundraising measures applies evenhandedly to all such devices governed by TABOR, which merely amount to different methods of raising public funds for expenditure. Whether they involve taxation or incurring public indebtedness, the techniques of public fundraising covered by the proposal are not sufficiently distinguishable in the public mind to suggest either an attempt to combine disparate voting blocks in order to secure passage or to surreptitiously include certain fundraising techniques that voters would be surprised to find in combination with the others. Quite the contrary, in light of their common purpose, there is little or no reason to believe that voters who would be inclined to favor a time limitation on exceptions to TABOR would be so inclined only if it included exceptions involving either taxation or debt creation, but not both.

Even a cursory review of this court's ballot title jurisprudence reveals an unmistakable lack of uniformity in our treatment of the single-subject requirement. Surely it cannot go unnoticed that popularly initiated measures affecting public funding have been subjected to far more exacting, and seemingly arbitrary, line-drawing than has been applied to most other initiatives. *See, e.g., In re Ballot Title 1999–2000 # 200A*, 992 P.2d 27 (Colo.2000) (finding no violation of single-subject requirement by initiative to adopt the "Woman's Right–To–Know Act," adding to the revised statutes a dozen new sections, with more than 50 paragraphs, imposing on physicians a plethora of notice-to-patient requirements and data reporting requirements, as well as civil and criminal penalties for violation). While we have disapproved funding bills of the general assembly for including multiple subjects, such harsh action has apparently been reserved for laundry lists of fees and expenditures for numerous and diverse purposes, similar to a general appropriations bill. *See, e.g., In re House Bill No. 1353*, 738 P.2d 371 (Colo.1987); *cf. In re House Bill No. 168*, 21 Colo. 47, 39 P. 1096 (1895). Even if this disparity of treatment could be characterized as an attempt to protect voters from themselves, I do not believe such paternalism finds support in the language or history of the constitutional single-subject provision.

Because I believe today's judgment strips Colorado voters of a fundamental prerogative reserved to them by the state constitution, without protecting them in any meaningful way from either of the evils contemplated by the single-subject requirement, I would affirm the action of the title board. I therefore respectfully dissent.