Matter of TITLE, BALLOT TITLE AND
SUBMISSION CLAUSE, SUMMARY
FOR 1997-98 No. 84.

John S. OUTCELT, Petitioner,

v.

Douglas BRUCE and Jeffrey
Wright, Respondents,

and

Victoria Buckley, Rebecca Lennahan
and Richard Westfall, Title
Board. (Two Cases)

Matter of TITLE, BALLOT TITLE AND
SUBMISSION CLAUSE, SUMMARY
FOR 1997-98 No. 85.

Nos. 98SA147, 98SA148.

Supreme Court of Colorado,
En Banc.

June 8, 1998.

Susan E. Burch, Denver, for Petitioner.

Douglas Bruce, pro se, Jeffrey Wright, pro se, Colorado Springs, Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Board.

Justice MULLARKEY delivered the Opinion of the Court.

John Outcelt, a registered voter in the State of Colorado, challenges the actions of the initiative title setting board (the Board) in setting the title, ballot title and submission clause (collectively, the title), and summary for the proposed initiatives designated 1997–98 # 84 (Initiative # 84) and 1997–98 # 85 (Initiative # 85).[1]   Both initiatives would

---

1. The title, ballot title and submission clause, and summary of Initiative # 84 are attached hereto as APPENDIX A. The title, ballot title and sub-  mission clause, and summary of Initiative # 85 are attached hereto as APPENDIX B.

amend article X, section 20, of the Colorado Constitution.[2]

On April 1, 1998, the Board set the title and summary for Initiative # 84 and Initiative # 85 at a hearing where the Board considered the proposed initiatives. On April 8, 1998, Outcelt filed motions for rehearing. The Board subsequently denied Outcelt's motions for rehearing on April 15, 1998. Pursuant to section 1–40–107(2), 1 C.R.S. (1997), Outcelt then sought this court's review of the Board's actions. Because Initiative # 84 and Initiative # 85 are nearly identical, we consolidated our review of the Board's actions for both initiatives.

We now hold that Initiative # 84 and Initiative # 85 contain multiple subjects and therefore violate article 5, section 1(5.5), of the Colorado Constitution. Accordingly, we reverse the Board's actions.

## I.

Except for one minor difference, Initiative # 84 is identical to Initiative # 85. Both Initiative # 84 and Initiative # 85 seek to amend article X, section 20, of the Colorado Constitution by adding a new paragraph (d) to subsection (8). The new paragraph (d) would lower various state and local taxes and would require the state to replace affected local revenue loss. In addition, under the new paragraph, the state's revenue replacement obligation is subject to all tax and spending limits. The new paragraph (d) under Initiative # 84 provides:

A $25 tax cut, increased $25 the next year and then $50 yearly (to $100, $150 ...), shall lower each tax bill for each 1999 and later district: utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attor-

ney and assessor offices, libraries, jails, courts, schools, economic development, enterprises, and authorities combined; property tax equal to yearly payments for lease-purchases and school debt; and remaining business personal property tax. The state shall replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs shall mandatorily be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less than $200 million.

The only difference in the new paragraph (d) under Initiative # 85 is that a tax cut on "franchise charges" is not included.[3]

Outcelt argues that the initiatives contain several deficiencies and that the Board's actions must therefore be reversed. First, Outcelt asserts that the initiatives contain multiple subjects. Second, Outcelt argues that even if there is only one subject in the initiatives, the title for each initiative does not correctly and fairly express the true intent and meaning of the initiatives. Third, Outcelt contends that by referring to a "tax cut," the titles contain an impermissible catch phrase. Fourth, Outcelt argues that Initiative # 84 and Initiative # 85 conflict with prior initiatives which this court recently addressed in *In re 1997–98 # 45*, 960 P.2d 648 (Colo.1998). Fifth, according to Outcelt, the titles of the initiatives do not conform with article X, section 20(3)(b), of the Colorado Constitution. Finally, Outcelt argues that the fiscal impact statements are incomplete.

We agree with Outcelt that Initiative # 84 and Initiative # 85 are unconstitutional be-

2. Article X, section 20, of the Colorado Constitution is entitled "The Taxpayer's Bill of Rights" and is commonly known as Amendment 1.

3. The impact statements for Initiative # 84 and Initiative # 85 are also virtually identical. For both initiatives, the Board concluded that the state income tax cut would reduce growth in the state's general fund revenue by $224,800,000 during the three-year period starting with fiscal year 1998–99. The state's costs in replacing

local government revenue losses during the same three-year period include $347,200,000 for vehicle ownership taxes, at least $455,300,000 for property taxes for specific purposes, and $42,-800,000 for business personal property taxes. The Board could not determine with specificity the costs to replace utility customer taxes, franchise charges, and other property taxes. In addition, the state would incur $1,100,000 in costs to administer the tax cuts.

cause they contain multiple subjects. Because the initiatives are invalid on that basis, we need not address Outcelt's additional challenges. *See In re 1997–98 # 30*, 959 P.2d 822, 827–28 (Colo.1998) (as modified Apr. 13, 1998) (explaining that because the initiative encompassed more than one subject, the court did not need to address the additional challenges to the initiative); *In re Amend TABOR 25*, 900 P.2d 121, 123 (Colo.1995) (holding that the initiative encompassed more than a single subject and declining to address whether the title, ballot title and submission clause, and summary conformed to the requirements of section 1–40–106(3), 1B C.R.S. (1994 Supp.)). Accordingly, we limit our discussion to the multiple subjects contained in the initiatives.

## II.

### A.

■ Under the Colorado Constitution, initiatives must be limited to a single subject. *See* Colo. Const. art. V, § 1(5.5); *In re "Public Rights in Waters II"*, 898 P.2d 1076, 1078 (Colo.1995). Article V, section 1(5.5), of the Colorado Constitution provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

We reviewed the history and purpose of article V, section 1(5.5) in *In re "Public Rights in Waters II"*, 898 P.2d at 1078–79. There, we explained that the single subject requirement "is intended to ensure that each proposal depends upon its own merits for passage," *In re "Public Rights in Waters II"*, 898 P.2d at 1078, and that the requirement "forbids the joining of 'incongruous subjects in the same measure.'" *Id.* (quoting § 1–40–106.5(1)(e)(I), 1B C.R.S. (1994 Supp.)). Like

the constitutional single subject requirement for bills passed by the General Assembly, the single subject requirement for initiatives prevents an initiative's proponents from joining together "multiple subjects into a single initiative in the hope of attracting support from various factions which may have different or even conflicting interests." *Id.* at 1079. Additionally, the single subject requirement is intended to protect voters against surprise and fraud. *See In re Petition Procedures*, 900 P.2d 104, 108 (Colo.1995) (citing § 1–40–106.5, 1B C.R.S. (1994 Supp.)).

■ Our prior decisions have established the appropriate test for determining whether or not an initiative adheres to the single subject requirement. *See, e.g., In re Petition Procedures*, 900 P.2d at 109; *In re "Public Rights in Waters II"*, 898 P.2d at 1078–79. An initiative violates the single subject requirement when it 1) relates to more than one subject and 2) has at least two distinct and separate purposes which are not dependent upon or connected with each other. *See In re "Public Rights in Waters II"*, 898 P.2d at 1078–79.

In reviewing the Board's actions setting the title, ballot title and submission clause, and summary, "we will engage in all legitimate presumptions in favor of the propriety of the Board's actions." *In re Petition Procedures*, 900 P.2d at 108. At the same time, "we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated." *In re 1997–98 # 30*, 959 P.2d at 825.

### B.

In *In re 1997–98 # 30*, we reviewed an initiative (Initiative # 30) that also proposed to amend article X, section 20, of the Colorado Constitution. Like the initiatives at issue in this case, Initiative # 30 would have added a new paragraph (d) to subsection (8) of section 20 of article X of the Colorado Constitution. See *In re 1997–98 # 30*, 959 P.2d at 823. In addition to similar tax-cutting language as that contained in Initiative # 84 and Initiative # 85, Initiative # 30 would have required the specification of a maximum tax rate with a fixed maximum number of dollars

in the ballot title of voter-approved revenue and spending increases enacted since 1992.[4] *See id.* at 823–23. In reviewing the initiative, we found "at least two subject matters in Initiative # 30." *Id.* at 826. First, we explained that Initiative # 30 created tax cuts. *See id.* Second, based on the "fixed maximum tax rates with a fixed maximum number of dollars" provision, we explained that Initiative # 30 imposed new criteria for voter-approved revenue and spending increases. *See id.* at 826–27. *Accordingly, we held that Initiative # 30 was unconstitutional.* See id. *at 827.*

In arguing that the initiatives now before us contain only one subject, the Board points out that the only difference between this case and *In re 1997–98 # 30* is that Initiative # 84 and Initiative # 85 have eliminated the objectionable provision in Initiative # 30 which referred to the "fixed maximum tax rates with a fixed maximum number of dollars." *See id.* at 826. Thus, according to the Board, "[t]he only subject issue raised by the petitioner which is not barred by the decision in [*In re 1997–98 # 30* ] is whether the shift of state revenue to fund local programs constitutes a separate subject." The Board argues that our decision in *In re Amend Tabor No. 32,* 908 P.2d 125 (Colo.1995), requires us to conclude that Initiative # 84 and Initiative # 85 do not include multiple subjects.

We agree with the Board that our opinion in *In re 1997–98 # 30* left open the question of whether or not the initiatives' provision requiring the state to "replace local revenue monthly within all tax and spending limits" constitutes an additional subject. In *In re 1997–98 # 30,* we stated:

> Outcelt argues that Initiative # 30 contains the third subject of a state revenue shift to fund local programs, causing a reduction in state programs because the initiative proposes to count the state replacement of local revenues as fiscal year spending for purposes of the state's Amendment 1 spending cap.
>
> . . . .

Because we conclude that the initiative contains more than one subject in violation of the Colorado Constitution, we do not address these additional contentions.

*In re 1997–98 # 30,* 959 P.2d at 827. Thus, the Board correctly notes that in *In re 1997–98 # 30,* we did not address the additional subject that we now consider here. We disagree with the Board, however, that our decision in *In re Amend Tabor No. 32* governs our analysis.

In *In re Amend Tabor No. 32,* we approved the action of the Board regarding a proposed initiative ("Amend TABOR No. 32") that sought to establish tax credits for various taxes. *See In re Amend Tabor No. 32,* 908 P.2d at 127–30. Amend TABOR No. 32 applied a $60 tax credit to six state or local taxes and required the state to replace on a monthly basis the local government revenues that would be lost as a result of the tax credits. *See id.* at 129. Thus, we rejected the argument that the single subject requirement was violated because more than one tax was affected. *See id.* We also explained that the requirement that the state replace lost local revenue was "dependent upon and closely connected to the $60 tax credit." *Id.* Accordingly, we held that the initiative in that case related to a "single definite object or purpose and d[id] not impermissibly encompass multiple unrelated subjects." *Id.*

The initiative at issue in *In re Amend Tabor No. 32* is significantly different from the two initiatives now before us. Amend TABOR No. 32 did not impose any limitations on the state in terms of the manner by which the state replaced lost local revenue. *See id.* The state was simply required to replace the revenue that localities lost as a result of the tax credit. By marked contrast, Initiative # 84 and Initiative # 85 provide that "the state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, *within all tax and spending limits.*" (Emphasis added.)

4. With the exception of property taxes spent on jails, Initiative # 30 contained all of the tax cuts found in Initiative # 84.

To understand the "within all tax and spending limits" provision, it is necessary to review briefly the existing constitutional limits on state spending and revenue collection.[5] Amendment 1 strictly limits increases in the state's annual spending and revenue collection. *See* Colo. Const. art. X, § 20(4)–(8). The state's maximum annual increase in spending is tied to the amount by which inflation and population increase. *See* Colo. Const. art. X, § 20(7)(a).[6] Without voter approval, the state may not impose any new tax, tax rate increase, or mill levy above that for the prior year without voter approval.[7] *See* Colo. Const. art. X, § 20(4).

Given that the "within all tax and spending limits" provision of the initiatives now before us includes the spending and revenue limits imposed by Amendment 1, the state will be able to replace local revenues lost through tax cuts only if it reduces existing state spending on state programs. The initiatives require the state to dedicate a portion of the state's current revenues to replace lost local revenue. Because of the spending and revenue limitations contained in article X, section 20, however, the state cannot increase either its overall spending or revenue collection to maintain the current level of spending on state programs. As a result, the state must lower the amount it spends on state programs. Moreover, because the initiatives provide for increasing the amount of the tax cuts on an annual basis, the state must make ever greater reductions in its spending on state programs.

Properly viewed, then, Initiative # 84 and Initiative # 85 violate the single subject requirement. Notwithstanding the fact that the initiatives no longer include criteria for voter-approved revenue and spending increases, Initiative # 84 and Initiative # 85 still contain more than one subject. First, the initiatives provide for tax cuts. Second, the initiatives impose mandatory reductions in state spending on state programs. These two subjects are distinct and have separate purposes. While requiring the state to replace affected local revenue in itself sufficiently relates to a tax cut, requiring the state separately to reduce its spending on state programs is not "dependent upon and clearly related" to the tax cut. *In re Amend Tabor No. 32*, 908 P.2d at 129. The tax cuts and mandatory state spending reduction do not encompass "a single definite object or purpose." *Id.* The dual constitutional changes which would be enacted by these initiatives are precisely the types of mischief which the single subject requirement was intended to prevent.[8] Voters would be surprised to learn that by voting for local tax

---

5. As we explain, our conclusion that the state must reduce state spending programs follows directly from a facial reading of the initiatives. This conclusion is in keeping with our observation in *In re 1997–98 # 30* that "we must engage in some substantive inquiry but avoid predicting legal consequences." *In re 1997–98 # 30*, 959 P.2d at 825 n. 2. Here, we are not attempting to predict the possible legal consequences that *may occur* if the initiatives actually become law. Rather, our analysis is limited to identifying and characterizing the proposals and analyzing the operation of the "within all tax and spending limits" provision.

6. Article X, section 20(7)(a), of the Colorado Constitution provides:

   The maximum annual percentage change in state fiscal year spending equals inflation plus the percentage change in state population in the prior calendar year, adjusted for revenue changes approved by voters after 1991. Population shall be determined by annual federal census estimates and such number shall be adjusted every decade to match the federal census.

7. Article X, section 20, of the Colorado Constitution provides for certain narrow exceptions to the requirement that voters must approve tax increases beyond the inflation/population index. *See* Colo. Const. art. X, § 20(1), (4), (6).

8. We explained in *In re "Public Waters II"* that the Legislative Council's Analysis of 1994 Ballot Proposals, Research Publication No. 392 at 3, cited Amendment 1 as an example of an initiative that might not meet the single subject test. *See In re "Public Waters II"*, 898 P.2d at 1079. We note that Initiative # 84 and Initiative # 85 affect both the taxing and spending limits found within Amendment 1 and therefore arguably violate the single subject requirement on that basis alone. *See In re 1997–98 # 30*, 959 P.2d at 826 (explaining that the revenue limitations and spending limitations under Amendment 1 operate independently). Because we find that the initiatives have multiple subjects based on the tax cuts and mandatory reduction in state spending, we do not address that argument here.

cuts, they also had required the reduction, and possible eventual elimination, of state programs. *See In re 1997–98 # 30,* 959 P.2d at 827. That type of hidden subject is not permitted under article V, section 1(5.5), of the Colorado Constitution. Accordingly, the initiatives are not constitutional.

### III.

Initiative # 84 and Initiative # 85 contain multiple subjects and thus violate the single subject requirement in article 5, section 1(5.5), of the Colorado Constitution. Therefore, the Board erred in setting the title, ballot title and submission clause, and summary for the initiatives. We remand this matter to the Board with directions to strike the title, ballot title and submission clause, and summary for Initiative # 84 and Initiative # 85 and to return the initiatives to the proponents.

KOURLIS, J., dissents, and MARTINEZ, J., joins in the dissent.

### Appendix A

### PROPOSED INITIATIVE NUMBER "1997–98 # 84"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX AND FRANCHISE CHARGE, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer tax and franchise charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, jails, courts, schools, economic development, enterprises, and authorities combined; property tax equal to annual payments for lease-purchases and school debt; and remaining business personal property tax. The initial tax cut of $25 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each

limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,800,000 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

- Vehicle ownership taxes—$347,200,000

- Property tax for specific services—at least $455,300,000

- Business personal property tax—$42,800,000.

The state would also incur costs to replace local government revenue losses for utility customer taxes, franchise charges, and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,071,200,000 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned April 1, 1998, 5:48 p.m.

April 15, 1998 Rehearing

- Mr. John S. Outcelt motion denied.

Rehearing adjourned 4:50 p.m.

### Appendix B

Proposed Initiative Number "1997–98 # 85"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION

ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer tax; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, jails, courts, schools, economic development, enterprises, and authorities combined; property tax equal to annual payments for lease-purchases and school debt; and remaining business personal property tax. The initial tax cut of $25 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,800,000 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

- Vehicle ownership taxes—$347,200,000
- Property tax for specific services—at least $455,300,000
- Business personal property tax—$42,800,000.

The state would also incur costs to replace local government revenue losses for utility customer-taxes and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,071,200,000 during the three-year period beginning with fiscal year 1998-99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees

and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned April 1, 1998, 5:50 p.m.

April 15, 1998 Rehearing

• Mr. John S. Outcelt motion denied.

Rehearing adjourned 4:53 p.m.

Justice KOURLIS dissenting:

Because I believe that *Amend Tabor No. 32*, 908 P.2d 125 (Colo.1995), controls the outcome of this case, I respectfully dissent.

In *Amend Tabor No. 32*, we considered whether an initiative violated the single subject rule because it both applied a $60 tax credit to multiple taxes and required the state to replace local government revenue lost because of the tax credit. We determined that despite the requirement that the state replace local revenue, the single purpose of the initiative was the implementation of the tax credit. *See Amend Tabor No. 32*, 908 P.2d at 129. We concluded that the provision of the initiative requiring the mandatory replacement of lost local government revenue was dependent upon and closely related to the $60 tax credit. *See id.* Because the initiative related to a single definite object or purpose, we held that it did not impermissibly encompass multiple unrelated subjects. *See id.*

The relevant language in Initiatives # 84 and # 85 is identical to that of the initiative in *Amend Tabor No. 32* except that it adds "within all tax and spending limits" and yearly audits of such limits. Hence, as an initial matter, our recent precedent dictates that the coupling of a local tax cut with revenue replacement from the state does not incorporate separate subjects.

The only distinction between Initiatives # 84 and # 85 and the initiative at issue in *Amend Tabor No. 32* rests in the "within all tax and spending limits" language. The majority concludes that this language identifies a separate and independent purpose of reducing spending on state programs, and

that such purpose was not included within the language of the Amend Tabor No. 32 initiative. I do not view the difference in language as creating a new subject, and therefore I read *Amend Tabor No. 32* as controlling precedent.

Initiatives # 84 and # 85 do not attempt to place the issue of new spending caps before the voters. The initiatives explicitly place tax cuts within the aegis of existing caps, but they do not create those caps.

The spending caps are already in place. *See* Colo. Const. art. X, § 20(4)–(8) [hereinafter Amendment 1]. The question of whether the revenue replacement in the current proposal would fall within the spending caps without an explicit reference is a matter of legal interpretation. It is not a separate subject. I do not believe that merely referring to an already enacted spending cap and clarifying that the revenue reallocation contemplated by the initiative would fall within that spending cap is sufficient to create a separate subject. It is Amendment 1, not Initiatives # 84 and # 85, that places a revenue and spending cap on local and state governments. The initiatives, by simply referring to that spending cap, do not put a separate subject before the voters for their consideration.

As we have explained on many occasions, the purpose of the single subject requirement of article V, section 1(5.5) is to prohibit the practice of putting together in one measure subjects having no necessary or proper connection for the purpose of garnering support for measures from parties who might otherwise stand in opposition. *See e.g., In re Parental Choice in Education*, 917 P.2d 292, 294 (Colo.1996); *Amend Tabor 25*, 900 P.2d 121, 124–25 (Colo.1995). In addition, the requirement seeks to prevent surreptitious measures, surprise and fraud upon the voters. *See* § 1–40–106.5(1)(e)(II), 1 C.R.S. (1997).

The dilemma raised by these initiatives involves the extent to which this court must necessarily interpret and construe a proposed initiative in order to determine wheth-

er it contains a single subject or multiple subjects, and the extent to which such inquiry is impermissible. The court must balance the need to engage in some substantive inquiry against the need to avoid predicting legal consequences. I agree that we must at least engage in something more than a facial review of a proposed initiative in order to determine whether it is consistent with the single subject requirement. However, we must not venture into the territory of prejudging the interrelationship between the initiative and other constitutional or statutory provisions. We have neither the mandate nor the information to reach those issues at this early stage.

In my view, the majority's determination in this case that the reference in Initiatives # 84 and # 85 to spending caps creates a second subject ranges too far into the interpretative process. Initiatives # 84 and # 85 do not purport to amend more than one section of the Constitution; on the contrary, they specifically intend to be consistent with another section. By labeling that reference as creating another subject, we are implicitly concluding that without the reference the revenue reallocation contemplated by Initiatives # 84 and # 85 might not be subject to those spending caps. That is an issue we should not reach.

*Amend Tabor No. 32,* in my view, dictates the conclusion that Initiatives # 84 and # 85 do not contain more than one subject. Hence, I respectfully dissent.

I am authorized to state that Justice MARTINEZ joins in this dissent.