In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997-1998 # 86.

John S. OUTCELT, Petitioner,

v.

Douglas BRUCE and Jeffrey Wright, Respondents,

and

Victoria Buckley, Rebecca Lennahan, and Richard Westfall, Title Board. (Two Cases).

In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997-1998 # 87.

Nos. 98SA184, 98SA185.

Supreme Court of Colorado, En Banc.

June 22, 1998.

Susan E. Burch, Denver, for Petitioner.

Douglas Bruce, Pro se.

Jeffrey Wright, Pro se.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Board.

Justice SCOTT delivered the Opinion of the Court.

John Outcelt, the petitioner before us and a registered voter, challenges the actions of the title setting board (Title Board) in setting the title, ballot title and submission clause (collectively, the Title) and summary for the proposed initiatives designated 1997-98 # 86 (Initiative # 86) and 1997-98 # 87 (Initiative # 87).[1] Both initiatives would amend article X, section 20, of the Colorado Constitution.[2]

---

1. The title, ballot title and submission clause, and summary of Initiative # 86 are attached hereto as APPENDIX A. The title, ballot title and sub-

mission clause, and summary of Initiative # 87 are attached hereto as APPENDIX B.

2. Article X, section 20, of the Colorado Constitution is entitled "The Taxpayer's Bill of Rights"

The respondents, Douglas Bruce and Jeffrey Wright, filed two initiatives, Initiative # 86 and Initiative # 87. The Title Board hearing was held on April 15, 1998, at which time the Titles and summaries were set. On April 22, 1998, Outcelt filed motions for rehearing. The Board subsequently denied Outcelt's motions for rehearing on May 6, 1998. Pursuant to section 1–40–107(2), 1 C.R.S. (1997), Outcelt then sought this Court's review of the Title Board's actions. Because Initiative # 86 and Initiative # 87 are nearly identical, we consolidated our review of the Title Board's actions for both initiatives.

Following our recent decision in *In re 1997–98 # 84*, 961 P.2d 456 Colo.1998), we now hold that Initiative # 86 and Initiative # 87 contain multiple subjects and therefore violate article V, section 1(5.5), of the Colorado Constitution. Accordingly, we disapprove of and reverse the Title Board's actions.

## I.

Initiative # 86 and Initiative # 87 are the same except that # 87 includes the phrase "to the extent allowed by the Colorado Supreme Court," and # 86 does not. Both Initiative # 86 and Initiative # 87 seek to amend article X, section 20, of the Colorado Constitution by adding a new paragraph (d) to subsection (8). The new paragraph (d) would lower various state and local taxes and would require the state to replace affected local revenue loss. In addition, under the new paragraph, the state's revenue replacement obligation is subject to all tax and spending limits. The new paragraph (d) under Initiative # 86 provides:

A $25 tax cut, increased $25 the next year and then $50 yearly (to $100, $150 … ), shall lower each 1999 and later district tax bill for each: utility customer sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health

services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to the yearly cost of lease-purchases, tax-increment financing, property tax credits and rebates not for uniform refunds of excess or illegal revenue or from overassessment, and school debt; and remaining business personal property tax. The state shall replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs to enforce (8)(d) *shall always* be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less than $200 million.

Outcelt argues that the initiatives contain several deficiencies and that the Title Board's actions must therefore be reversed. First, Outcelt asserts that the initiatives contain multiple subjects. Second, Outcelt argues that even if there is only one subject in the initiatives, the Title for each initiative does not correctly and fairly express the true intent and meaning of the initiatives. Third, Outcelt contends that by referring to a "tax cut," the Titles contain an impermissible catch phrase. Fourth, Outcelt argues that the Titles set for these measures conflict with those set for measures # 45, # 46, # 52, and # 53, which are now pending in case nos. 98SA44, 98SA45, 98SA46, and 98SA47. Fifth, according to Outcelt, the Titles of the initiatives do not conform with article X, section 20(3)(b), of the Colorado Constitution. Finally, Outcelt argues that the fiscal impact statements are incomplete.

We agree with Outcelt that Initiative # 86 and Initiative # 87 are unconstitutional because they contain multiple subjects. Because the initiatives are invalid on that basis, we need not address Outcelt's additional challenges. *See In re 1997–98 # 30*, 959 P.2d 822, 827 (Colo.1998) (as modified Apr. 13,

and is commonly known as "Amendment 1," a reference we will use in this opinion.

1998) (explaining that because the initiative encompassed more than one subject, the court need not address the additional challenges to the initiative); *In re Amend Tabor 25*, 900 P.2d 121, 123 (Colo.1995) (holding that the initiative encompassed more than a single subject and declining to address whether the title, ballot title and submission clause, and summary conformed to the requirements of section 1–40–106(3), 1B C.R.S. (1994 Supp.)). Accordingly, we limit our discussion to the multiple subjects contained in the initiatives.

## II.

## A.

■ Under the Colorado Constitution, initiatives must be limited to a single subject. *See* Colo. Const. art. V, § 1(5.5); *In re "Public Rights in Waters II"*, 898 P.2d 1076, 1078 (Colo.1995). Article V, section 1(5.5), of the Colorado Constitution provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

The single-subject requirement "is intended to ensure that each proposal depends upon its own merits for passage," *In re "Public Rights in Waters II"*, 898 P.2d at 1078, and to "forbid[ ] the joining of 'incongruous subjects in the same measure.'" *Id.* (quoting § 1–40–106.5(1)(e)(I), 1B C.R.S. (1994 Supp.)). Like the constitutional single-subject requirement for bills passed by the General Assembly, the single-subject requirement for initiatives prevents an initiative's

proponents from joining together "multiple subjects into a single initiative in the hope of attracting support from various factions which may have different or even conflicting interests." *Id.* at 1079. Additionally, the single-subject requirement is intended to protect voters against surprise and fraud. *See In re Petition Procedures*, 900 P.2d 104, 108 (Colo.1995) (citing § 1–40–106.5, 1B C.R.S. (1994 Supp.)).

■ In general, an initiative violates the single-subject requirement when it: (1) relates to more than one subject, and (2) has at least two distinct and separate purposes which are not dependent upon or connected with each other. *See In re "Public Rights in Waters II"*, 898 P.2d at 1078–79. In reviewing the Title Board's actions setting the title, ballot title and submission clause, and summary, "we will engage in all legitimate presumptions in favor of the propriety of the Board's actions." *In re Petition Procedures*, 900 P.2d at 108. At the same time, "we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated." *In re 1997–98 # 84*, 961 P.2d at 458.

## B.

■ Our decision in *In re 1997–98 # 84*, 961 P.2d 456, 458–461 (Colo.1998), controls the outcome here. In *In re 1997–98 # 84*, we reviewed Initiatives # 84 and # 85, which also proposed to amend the Colorado Constitution by adding a new paragraph (d) to subsection (8) of section 20 of article X of the Colorado Constitution. Like the initiatives at issue here, Initiatives # 84 and # 85 would have established state and local tax cuts to increase in subsequent years, and also provided that "the state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, *within all tax and spending limits.*" [3]

---

**3.** Initiative # 84 provides:

A $25 tax cut, increased $25 the next year and then $50 yearly (to $100, $150 ... ), shall lower each tax bill for each 1999 and later district: utility customer tax and franchise

charge; vehicle ownership tax; yearly income tax; property tax spent on human and health services, district attorney and assessor offices, libraries, jails, courts, schools, economic development, enterprises, and authorities combined;

*In re 1997–98 # 84,* 961 P.2d at 459 (emphasis added).

We determined in *In re 1997–98 # 84,* that the qualification "within all tax and spending limits," would ultimately require the State to lower the amount it spends on state programs. This is because under article X, section 20, the State's maximum annual increase in spending is restricted to the amount by which inflation and population increase, *see* Colo. Const. art. X, § 20(7)(a), and that without voter approval, the state may not impose any new tax, tax rate, increase, or mill levy above that for the prior year, *see* Colo. Const. art. X, § 20(4). Consequently, any tax cut under Initiatives # 84 and # 85, because of the spending and revenue limitations contained in article X, section 20, would, in effect, mandate a reduction in state spending on state programs.

We therefore found that Initiatives # 84 and # 85 contained multiple subjects, that is: (1) the initiatives provided for tax cuts, and (2) the initiatives imposed mandatory reductions in state spending on state programs. We explained that:

> [t]hese two subjects are distinct and have separate purposes.... The tax cuts and mandatory state spending reduction do not encompass "a single definite object or purpose." The dual constitutional changes which would be enacted by these initiatives are precisely the types of mischief which the single subject requirement was intended to prevent. Voters would be surprised to learn that by voting for local tax cuts, they also had required the reduction, and possible eventual elimination, of state programs. That type of hidden subject is not permitted under article V, section 1(5.5) of the Colorado Constitution. Accordingly, the initiatives are not constitutional.

*In re 1997–98 # 84,* 961 P.2d at 461 (citations omitted). Because Initiatives # 86 and # 87 contain the exact same language as provided in Initiatives # 84 and # 85, providing for tax

cuts and requiring the state to replace local government revenue affected by the tax cuts "within all tax and spending limits," we hold that Initiatives # 86 and # 87 violate the single subject requirement and, therefore, are unconstitutional.

### III.

Initiative # 86 and Initiative # 87 contain multiple subjects and thus violate the single subject requirement in article V, section 1(5.5) of the Colorado Constitution. Therefore, we conclude that the Title Board erred by setting the title, ballot title and submission clause, and summary for those two initiatives and we disapprove of its actions in that regard. Accordingly, we reverse the Title Board's actions and remand this matter to the Title Board with directions to strike the title, ballot title and submission clause, and summary for Initiative # 86 and Initiative # 87 and to return the initiatives to the proponents.

### APPENDIX A

### PROPOSED INITIATIVE NUMBER "1997–98 # 86"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPEND-

---

property tax equal to yearly payments for lease-purchases and school debt; and remaining business personal property tax. The state shall replace affected local revenue monthly within all tax and spending limits, and audit each limit yearly; legal fees and costs shall mandatorily be awarded to successful plaintiffs only; and once a year, the general assembly may delay for one year all or part of the next

year's increase in one or more tax cuts, but only if further tax cut or replacement amounts in that next year will leave total remaining state revenue from all sources growing less that $200 million.

The only difference in the new paragraph (d) under Initiative # 85 is that a tax cut on "franchise charge" is not included.

ING LIMITS AND YEARLY STATE AU-
DITS OF SUCH LIMITS; AWARDING
MANDATORY LEGAL FEES AND COSTS
TO SUCCESSFUL PLAINTIFFS ONLY;
AND ALLOWING A DELAY IN YEARLY
INCREASES IN ONE OR MORE TAX
CUTS IF REMAINING YEARLY STATE
REVENUE FROM ALL SOURCES WILL
GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT
TO THE COLORADO CONSTITUTION
ESTABLISHING A $25 TAX CUT TO
LOWER EACH 1999 STATE AND LOCAL
TAX BILL FOR EACH UTILITY CUS-
TOMER SALES, USE, AND FRANCHISE
TAX, VEHICLE OWNERSHIP TAX,
YEARLY INCOME TAX, AND SPECI-
FIED PROPERTY TAX, AND, IN CON-
NECTION THEREWITH, INCREASING
THE TAX CUT $25 THE NEXT YEAR
AND $50 YEARLY THEREAFTER; RE-
QUIRING MONTHLY STATE REPLACE-
MENT OF AFFECTED LOCAL REVE-
NUE WITHIN TAX AND SPENDING
LIMITS AND YEARLY STATE AUDITS
OF SUCH LIMITS; AWARDING MANDA-
TORY LEGAL FEES AND COSTS TO
SUCCESSFUL PLAINTIFFS ONLY;
AND ALLOWING A DELAY IN YEARLY
INCREASES IN ONE OR MORE TAX
CUTS IF REMAINING YEARLY STATE
REVENUE FROM ALL SOURCES WILL
GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer sales, use, and franchise tax; vehicle owner-ship tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authori-ties, economic development, human and

health services, elections, jails, libraries, courts, schools, and district attorney, asses-sor, public relations, personnel, legal, finan-cial, and administrative offices combined; property tax equal to annual payments for lease-purchases, tax-increment financing, property tax credits and rebates that are not for uniform refunds of excess or illegal reve-nues or from overassessment, and school debt; and remaining business personal prop-erty tax. The initial tax cut of $25 is applied to tax bills for tax year 1999.

The state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement reve-nues will result in total remaining state reve-nue in that next year from all sources grow-ing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,800,000 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility custom-er tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

The cost to the state of replacing local government revenue losses during the three-year period beginning with fiscal year 1998–99 would be as follows:

* Vehicle ownership taxes—$347,200,000

* Property tax for specific services—at least $951,400,000

* Business personal property tax—$42,-800,000

The state would also incur costs to replace local government revenue losses for utility customer sales, use, and franchise taxes and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this

measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,567,300,000 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned April 15, 1998, 3:12 p.m.

Rehearing, May 6, 1998

* Douglas Bruce Motion denied.

* John S. Outcelt Motion denied.

Hearing adjourned 2:20 p.m.

### APPENDIX B

### PROPOSED INITIATIVE NUMBER "1997–98 # 86"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; TO THE EXTENT ALLOWED BY THE COLORADO SUPREME COURT; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION ESTABLISHING A $25 TAX CUT TO LOWER EACH 1999 STATE AND LOCAL TAX BILL FOR EACH UTILITY CUSTOMER SALES, USE, AND FRANCHISE TAX, VEHICLE OWNERSHIP TAX, YEARLY INCOME TAX, AND SPECIFIED PROPERTY TAX, AND, IN CONNECTION THEREWITH, INCREASING THE TAX CUT $25 THE NEXT YEAR AND $50 YEARLY THEREAFTER; TO THE EXTENT ALLOWED BY THE COLORADO SUPREME COURT; REQUIRING MONTHLY STATE REPLACEMENT OF AFFECTED LOCAL REVENUE WITHIN TAX AND SPENDING LIMITS AND YEARLY STATE AUDITS OF SUCH LIMITS; AWARDING MANDATORY LEGAL FEES AND COSTS TO SUCCESSFUL PLAINTIFFS ONLY; AND ALLOWING A DELAY IN YEARLY INCREASES IN ONE OR MORE TAX CUTS IF REMAINING YEARLY STATE REVENUE FROM ALL SOURCES WILL GROW LESS THAN $200 MILLION?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A $25 tax cut, increased $25 the next year and $50 each year thereafter, would lower each state and local tax bill for each utility customer

sales, use, and franchise tax; vehicle ownership tax; yearly income tax; property tax spent on elected officials, entertainment, gifts, loans, retirement benefits, out-of-state trips, lobbying, consultants, studies, dues, publications, recreation, enterprises, authorities, economic development, human and health services, elections, jails, libraries, courts, schools, and district attorney, assessor, public relations, personnel, legal, financial, and administrative offices combined; property tax equal to annual payments for lease-purchases, tax-increment financing, property tax credits and rebates that are not for uniform refunds of excess or illegal revenues or from overassessment, and school debt; and remaining business personal property tax. The initial tax cut of $25 is applied to tax bills for tax year 1999.

To the extent allowed by the Colorado supreme court, the state is required to replace monthly the local government revenue affected by the tax cuts established by this measure, within all tax and spending limits, and to audit each limit yearly. Legal fees and costs are awarded mandatorily to successful plaintiffs only who seek to enforce this new measure. Once a year, the general assembly may delay for one year all or a portion of the next year's increase in the tax cut for one or more taxes specified in this measure if further increase in the tax cuts or replacement revenues will result in total remaining state revenue in that next year from all sources growing less than $200 million.

*State impacts.* The state income tax cut would reduce the growth in state general fund revenue by $224,800,000 during the three-year period beginning with fiscal year 1998–99. The cut in the state utility customer tax would reduce the growth in state general fund revenue by an indeterminate amount during the same three-year period.

Assuming the greatest extent of state replacement of local government revenue losses is allowed, the replacement cost to the state during the three-year period beginning with fiscal year 1998–99 would be as follows:

* Vehicle ownership taxes—$347,200,000

* Property tax for specific services—at least $951,400,000
* Business personal property tax—$42,800,000

The state would also incur costs to replace local government revenue losses for utility customer sales, use, and franchise taxes and other property taxes, but the amount of these additional costs is indeterminate. The state would incur costs of at least $1,100,000 to administer the tax cuts allowed by this measure. In addition, the state may incur costs for possible annual audits, but the amount of these additional costs is indeterminate.

The combined effect of the revenue reductions and the increased expenditure requirements is a net negative state fiscal impact of at least $1,567,300,000 during the three-year period beginning with fiscal year 1998–99. The figure does not include the amount of negative fiscal impact that will occur but is indeterminate at this time.

The fiscal impact to the state described above assumes no impact by the $200,000,000 minimum annual increase in all state revenue contained in the measure.

*Local impacts.* This measure may have a negative fiscal impact on some local governments, since the state would be obligated to replace local revenue losses only up to local tax and spending limits and revenues are currently being collected outside those limits. This measure may increase local government costs due to possible audit costs, legal fees and costs that must be mandatorily awarded, and possible increased litigation. The amount of these additional local costs is indeterminate.

Hearing adjourned April 15, 1998, 4:25 p.m.

Rehearing, May 6, 1998

* Douglas Bruce Motion denied.
* John S. Outcelt Motion denied.

Hearing adjourned 2:20 p.m.

Justice KOURLIS dissenting:

I respectfully dissent in these cases for the same reason set forth in my dissent in the consolidated cases *In re 1997–98 # 84,* and *In re 1997–98 # 85,* 961 P.2d 456 (Colo.1998).

As I previously stated, I believe that *Amend Tabor No. 32*, 908 P.2d 125 (Colo. 1995), controls the outcome of this case and directs that an initiative creating a tax cut coupled with revenue replacement from the state does not incorporate separate subjects. The additional language included in Initiatives # 86 and # 87 does not alter my conclusion.

Initiatives # 86 and # 87, like Initiatives # 84 and # 85, refer specifically to spending caps already in place under our state constitution. *See* Colo. Const. art. X, § 20(4)-(8). These initiatives, however, do not create the spending caps or place the issue before the voters as a separate subject. Accordingly, I do not read Initiatives # 86 and # 87 to include multiple subjects and I would accordingly affirm the Title Board's decision.

I am authorized to state that Justice MARTINEZ joins in this dissent.